FRANCES E. ANDREWS, in equity, *vs.* CHARLES A. ANDREWS.

Cumberland.   Opinion February 25, 1889.

*Deed.   Reformation.   Mutual mistake.*

To warrant the reformation of the description of land in a deed, the plaintiff must satisfy the court beyond reasonable controversy that the mistake was mutual.

Where the plaintiff's homestead farm was the subject matter of negotiations between the parties, neither of whom knew its actual external limits, and the deed subsequently made, through ignorance and misapprehension, included other small parcels of adjoining land, which many years before, one of the plaintiff's early predecessors in title had sold and conveyed, *Held*, that the mistake was one of fact; and it being mutual the deed should be reformed.

ON REPORT. Bill in equity, heard on bill, answer and proofs. The bill was brought to reform a deed of real estate, given by

the plaintiff to the defendant, October 14, 1884; the plaintiff claiming that a certain quarry, and three small lots of land were included in the description·in the deed under a mutual mistake, and that they should have been excepted therefrom. The facts are fully stated in the opinion.

*Frank and Larrabee*, for plaintiff.

Equity will relieve as between the parties in case of admitted mutual mistake in deeds. Will reform·the deed on parol evidence, though defendant denies the alleged mistake, if the court is fully satisfied on the evidence that there was a mistake. Story Eq.· § 140 and note on p. 154; Id. § 156; *Stines* v. *Hayes*, 36 N. J. Eq. 369; *Lass* v. *Obry*, 22 Id. 55; *Gillespie* v. *Moon*, 2 Johns. ·Ch. 585, and note (Lawyer's Co-op. Ed.).

. *C. A. Strout, H. W. Gage, and C. A. Strout*, for defendant.

Counsel cited: Story's Eq., vol. 1, § 156, 157. Mistake must be made out by clearest evidence, according to understanding of both parties. *Andrews* v. *Ins. Co.*, 3 Mason, 10; *Farley* v. *Bryant*, 32 Maine, 483.

Evidence : (strongest possible) Pom. Eq., vol. 2, § 859; (irrefragable) *Tucker* v. *Madden*, 44 Maine, 215; (beyond reasonable doubt) *Stockbridge Co.* v. *Hudson Co.*, 102 Mass. 49; S. C. 107 Id. 317; *Ins. Co.* v. *Davis*, 131 Id. 316. Nothing certain but the written deed where testimony is conflicting and contradictory. *Sawyer* v. *Hersey*, 3 Allen, 333. Intention of both parties must be misrepresented by mistake in the written contract. Mistake of one side not sufficient, unless other side agreed to it in same way. *Lyman* v. *Ins. Co.*, 17 Johns. 373. Mistake one side ground for recession, but not for alteration. *Young* v. *McGowan*, 62 Maine, 61. No fraud charged.

. VIRGIN, J. The plaintiff seeks to reform her warranty deed to the defendant, upon the ground that its metes and bounds include not only her homestead farm which alone she sold and intended to convey, but also, by reason of a misapprehension of its true boundaries, three other small adjoining parcels of land together with a granite ledge, all of which prior to 1867 were a part of the original farm but were severally sold and conveyed

to various grantees by the original owner,—one of the plaintiff's early predecessors in title.

The office of a description of the land in a deed of conveyance is to furnish and perpetuate the means of identifying the premises conveyed. And if the language is precisely what the parties intended it to be when they adopted it, nevertheless, if back of that they through ignorance or misapprehension mistakenly believed that it correctly delineated the actual boundaries of the premises intended to be conveyed, the mistake is one of fact and not of law. *Burr* v. *Hutchinson*, 61 Maine, 514 ; *Bush* v. *Hicks*, 60 N. Y. 298 ; *Baker* v. *Pyeatt*, 6 W. R. 283.

To sustain her bill under the equity head of mistake, with no allegation of fraudulent or other inequitable conduct on the part of the defendant, the plaintiff must prove that the deed not only misdescribes the real estate which she sold and intended to convey, but also that which the defendant understood he purchased,—that the mistake was mutual. *Butman* v. *Hussey*, 30 Maine, 263 ; *Burr* v. *Hutchinson*, *supra ; National Trad. Bank* v. *Ocean Ins. Co.*, 62 Maine, 519. In other words, that when the deed was executed, both parties understood it to convey the identical land which the bill alleges it ought and would have conveyed, had not the alleged mistake occurred ; and that the reformation, in some at least of the particulars alleged, is necessary in order that the deed may correctly speak the actual intention of both parties and thereby perfect and perpetuate their real agreement which the deed in its present form fails to express. *Lumbert* v. *Hill*, 41 Maine, 475 ; *Adams* v. *Stevens*, 49 Maine, 362 ; *Young* v. *McGowan*, 62 Maine, 56 ; *Andrews* v. *Essex Ins. Co.*, 3 Mason, 373 ; *Kilmer* v. *Smith*, 77 N. Y. 226, 232 ; *German & Am. Ins. Co.* v. *Davis*, 131 Mass. 317. For if the plaintiff only was mistaken, a reformation obviating her mistake would only result in the inequitable consequence of shifting from the plaintiff to the defendant the burden of abiding by a contract which he never made. Hence if the parties differently understood the original agreement as to the identity of the premises, the relief would take on the form of cancellation rather than reformation. *Young* v. *McGowan*, 62 Maine, 56, 61.

1. As to the reformation sought in relation to the granite :

Miltimore Watts owned the farm from 1846 to 1880, when he conveyed it to the plaintiff's former husband by a deed which by metes and bounds included not only the farm as it then existed, but also the three small adjoining parcels of land and the granite ledge of thirty to forty acres before mentioned, all of which parcels and ledge he had in 1852, 1853 and 1867 conveyed to various grantees. The plaintiff being ignorant of the true bounds of the farm and knowing that her husband had sold off none of it, until the day before his decease in May, 1882, when he conveyed it to her, fully believed that the Watts deed to her husband correctly described the farm as it then existed. Her husband's deed to her afforded no information as to its limits, the description therein being simply, "my (his) homestead farm on which I now reside and formerly known as the Miltimore Watts farm." She confidently relied upon the supposed accuracy of the deed of Watts (her cousin) and beyond all doubt executed her deed to the defendant under this mistaken belief. It would be absurd to suppose that she knowingly undertook to warrant and defend the title to various parcels of land of which she had no title, especially as she took back a mortgage of the same premises to secure two-thirds of the entire purchase money, some of which, was not payable till seven years thereafter. And if we felt equally certain that this mistake as to the granite was mutual we should not hesitate to sustain the bill in respect of that at least.

Was the mistake mutual? In 1867, Watts by his unconditional warranty deed, conveyed to one Goss "all the granite" in some forty acres of the farm, "excepting and reserving so much thereof as may be necessary for the cellar and underpinning of a new barn and shed,"—with the right at all times to enter and remove it and a right of way therefrom through the pasture to the highway. Goss worked the ledge for a few years, when the granite proving too soft for other use than that of walls, he suspended all further operations thereon some ten or twelve years ago.

In relation to the granite, the plaintiff testified that she knew she did not own it, and that during their negotiations, she so informed the defendant, in which she was fully corroborated by

her present husband,—brother of the defendant. Clark, one of the defendant's witnesses, testified on cross-examination, that he informed the defendant of Goss' title in the granite. While admitting this information from Clark, the defendant and his wife testified that on mentioning Goss' title to the plaintiff she replied that Goss once owned it, but by reason of his neglecting to pick and pile the loose stone resulting from working the ledge, he had forfeited his right to the ledge and that she had a perfect right to sell it and had been so advised by her attorney. These statements she and her husband unqualifiedly denied, declaring that they never heard of any "forfeiture" until 1888, and gave a very different explanation of what was said about picking and piling the stone. Watts' deed was unconditional and no attorney ever advised her of any forfeiture. Moreover, Goss himself testified, that when he demanded of her pay for the granite which she appropriated for her new barn, she did not claim exemption by reason of any supposed forfeiture but under the exception or reservation expressed in Watts' deed to Goss.

Nevertheless, in corroboration of the testimony of the defendant and his wife, his other brother, sister and nephew testify that the plaintiff subsequently and frequently made like declarations relating to the forfeiture, and her right to sell the granite. Therefore, although the preponderance of this conflicting testimony might, in our view, be in favor of the plaintiff, still that is not sufficient; for to warrant the reformation of so solemn an instrument as a deed, the fact of mutual mistake must be "fully proved" or "established beyond fair and reasonable controversy." *Fessenden* v. *Ockington*, 74 Maine, 123. So far as the granite is concerned therefore, the plaintiff has not sustained the burden of proving that it was included in the deed by mutual mistake; and hence no reformation in respect of that can be decreed.

2. As to the small parcels of land formerly belonging to the farm but which Watts in 1882–3 sold and conveyed to Marston, Rice and Plummer respectively:

The evidence satisfies us beyond all cavil that the plaintiff's homestead farm, which she and her husband had successively owned and occupied, was the sole subject of the parties' negoti-

ations, without any regard to its specific boundaries. She made no attempt personally to point them out, for she did not know them. While they had talked about the granite and its title, nothing was said or known by either of them about these parcels which had been sold more than thirty years to adjoining owners. It is morally certain, that neither of them had any knowledge whatever of the external limits of the farm, about which they were negotiating. The defendant, to be sure, with one Atwood who resided in the neighborhood, started with the Watts deed to look over the farm, when the rain prevented their proceeding further than the ledge. And the defendant testifies that he, subsequently, with the same deed in hand perambulated the lines and found certain monuments which he described. But he is evidently mistaken about the monuments, for the evidence is overwhelming that those monuments were all erected long after the execution of the deed to him. Moreover he is also mistaken as to his perambulation of the lines; for the Watts deed furnished no evidence by which a stranger could locate the land described in it. It contains twelve or more different general courses, no one of which is specified, otherwise than as "thence northerly," or "easterly," etc.; and the length of none of the lines is given. The terminus of each line after leaving the respective points of departure, is defined as "to the land owned," or "formerly owned by" some person named, or "to the side line of" some lot named, etc. Atwood, Marston, Plummer and others testified that it is impossible to trace the lines thus generally defined in the Watts deed without a knowledge of the bounds of the adjoining lands and lots mentioned. Even the surveyor, who made the plan, could not trace the lines with that deed alone. Besides, the defendant himself, long after he took possession under his deed, built or repaired the fence between the farm and the Plummer parcel without suspicion that his deed in terms included that parcel. And Marston was cutting the wood on his and Rice's parcel year after year without any suggestion of trespass from the defendant.

Finally, we have no doubt that if the deed be reformed as to these three small parcels, the defendant will then have all the land, save the granite, which he supposed he was buying, and we by no

means feel sure about the granite.   He believed he made a good trade, without any knowledge of its external boundaries, and repeatedly declared he could sell for $500 more than he gave. The buildings were good, some of them new on which he obtained an insurance for $2500, or $20 more than he gave for the whole farm and the twenty tons of hay then in the barn.

Our conclusion, therefore, is that the defendant be perpetually enjoined from prosecuting his action at law on the plaintiff's covenants in her deed to the defendant, so far as the three parcels of land sold by Watts to Marston, Rice & Plummer are alone concerned; and that the defendant, on demand, execute a deed of release to Marston of the Marston & Rice parcels and a deed of release of the Plummer parcel to Plummer, both of which deeds shall be prepared by the plaintiff and recorded in Cumberland registry of deeds at her own expense.   And that the mortgage of defendant to the plaintiff be reformed by the plaintiff's releasing the same parcel to the defendant.

*Decree accordingly.*

PETERS, C. J., WALTON, DANFORTH, EMERY and HASKELL, JJ., concurred.