BARTLETT *et al.*, Appellants, v. BROWN *et al.*

### Division Two, March 24, 1894.

1. **Deed:** MISTAKE: BOUNDARIES. The boundaries, as shown by a deed, will, in the absence of evidence of mistake, prevail over a second deed by the same grantor conveying part of the same land.

2. ———: ———. A deed by a grantor to his grantee after the death of the latter is of no effect in correction of a former deed if executed without the consent of the grantee's heirs.

3. ———: ———: EQUITY. A mistake in a deed, to authorize its correction by a court of equity, must be a mutual one and the evidence to establish it must be clear and convincing.

4. ———: BOUNDARIES: ESTOPPEL. A practical location and long continued recognition and acquiescence in a boundary line will conclude the parties thereto.

5. **Supreme Court Practice:** EQUITY CASE: FINDING. The supreme court will defer to the finding of the trial court in an equity case unless the preponderance of the evidence is against it.

*Appeal from Buchanan Circuit Court.*—HON. HENRY M. RAMEY, Judge.

AFFIRMED.

*B. R. Vineyard* and *Hall & Pike* for appellants.

(1) The evidence adduced by plaintiff was competent and sufficient to establish the south boundary on the north line of the private road as the one intended to be described in the deed. *Jones v. Poundstone,* 102 Mo. 240; *Turner v. Baker,* 64 Mo. 218; *Fuch v. Treat,* 41 Wis. 404; *Broadway v. Buxton,* 43 Conn. 282; *Andrews v. Andrews,* 81 Me. 337; *Root v. Cincinnati,* 54 N. W. Rep. (Iowa) 206; *Hegueras v. U. S.,* 5 Wall.
VOL. 121—23

827; *Ufford v. Wilkins*, 33 Iowa, 110; *Virginia v. Tennessee*, 148 U. S. 522; *Baldwin v. Brown*, 16 N. Y. 359; *Reed v. Farr*, 35 N. Y. 113; *Dolde v. Vodicka*, 49 Mo. 98; *Blassingame v. Davis*, 68 Tex. 597; *Boone Co. v. Anderson Co.*, 89 Tenn. 259; *Culbertson v. Duncan*, 13 Atl. Rep. (Pa.) 966; *Taylor v. Arnold*, 17 S. W. Rep. 361; *Lecompte v. Lueders*, 51 N. W. Rep. 542; *Doolittle v. Bailey*, 52 N. W. Rep. 337. (2) Equity will supply in the deed words to make the description conform to the intention of the parties, so that it will read: Beginning at a point in the center of the state road, etc., where the north line of the private road leading to the cemetery intersects the same; thence east twelve chains to a stake; thence north to a stake, etc. Distance and quantity, if the deed so reads, would be rejected at law. *Orrick v. Bower*, 29 Mo. 210; *Campbell v. Johnson*, 44 Mo. 247; *Kincaid v. Dormey*, 47 Mo. 340; *Thayer v. Finton*, 108 N. Y. 394. (3) That it is competent for a court of equity to grant the relief prayed can not be doubted, and neither lapse of time nor the statute of limitations will bar the application. *Hutson v. Fumas*, 31 Iowa, 154; Pom. Eq. Jur., secs. 174, 180, 859, 1384, 1398, 1399; *Virginia v. Tenn.*, 148 U. S. 504; 2 Lead Cas. in Eq. 476. (4) Joseph and his heirs were estopped to assert title to any of the land in controversy. *Dolde v. Vodicka*, 49 Mo. 98; 7 Am. and Eng. Encyclopedia of Law, 15 and note 3; *Burnes v. Fitch*, 76 Cal. 395; *Mellor v. Hammond*, 17 Mo. 200; *Taylor v. Zepp*, 14 Mo. 482; *Turner v. Baker*, 64 Mo. 218; *Galbraith v. Lansford*, 87 Tenn. 104; *Byerdorfer v. Schultz*, 2 S. W. Rep. 492; *Lecomte v. Toudouze*, 82 Tex. 208. (5) Long acquiescence or recognition of a given line between coterminous proprietors, whose respective tracts were derived from different sources is, in the absence of evidence of a contrary intention, conclusive of a practical location of the line by them, and where

the land of one of such proprietors was conveyed to him out of land owned by the other—said conveyance first occasioning a division of the land—such acquiescence or recognition is also conclusive that such line was the one agreed upon when the sale was negotiated. Authorities *supra*, point 1. (6) The court erred in holding that the declarations and admissions of Joseph were not binding upon him, unless he knew his deed called for a different line. *Golterman v. Schiermeyer*, 111 Mo. 404; *Turner v. Baker*, *supra*. *Galbraith v. Lunsford*, *supra*.

*Vories & Vories* for respondents.

(1) A court of equity interferes to correct a mistake in a written instrument, only for the furtherance of justice; and it is not under any obligation to correct a mistake, although the fact of mistake appears ever so plainly, unless it also appears that its interference is necessary to prevent the perpetration of a fraud or some injustice. *Henderson v. Dickey,* 35 Mo. 126; 2 Pomeroy's Equity Juris., secs. 856–859; 1 Story's Equity, secs. 176 and 793. (2) Where land is sold by metes and bounds, as containing a given number of acres, should the fact appear that there was a mistake as to the number of acres, equity will give relief. *Paine v. Upton*, 87 N. Y. 327; *Belknap v. Sealey*, 14 N. Y. 144. (3) Courts of equity do not grant the high remedy of re-formation upon a probability, nor even upon a mere preponderance of evidence, but only a certainty of error. The evidence must be most clear and convincing. *Pennybacher v. Laidly*, 33 W. Va. 624; *Sweet v. Owens*, 109 Mo. 7; *Railroad v. Dunlap*, 86 Va. 346; *Moore v. Giesecke*, 76 Texas, 543. (4) The supreme court will not reverse the finding of trial courts in cases of equity, unless it appears that the preponder-

ance of evidence is against such finding. *Rawlins v. Rawlins*, 102 Mo. 563; *Gottschalk v. Kircher*, 109 Mo. 170. (5) Equity has jurisdiction to re-form a deed where there is a mutual mistake—that is, where there has been a meeting of the minds, but the deed does not express what was really intended by the parties thereto. 20 Am. and Eng. Encyclopedia of Law, p. 714 and cases cited. (6) He who seeks equity must do equity. Equity regards that as done which ought to have been done. 6 Am. and Eng. Encyclopedia of Law, pages 705 and 707 and cases cited; *Woodard v. Mastin*, 106 Mo. 324. (7) A court of equity has no jurisdiction to fix boundaries unless some equity is superinduced by the act of the parties, or unless some particular circumstance of fraud or collusion exists. 6 Am. and Eng. Encyclopedia of Law, p. 722 and cases cited; 2 Am. and Eng. Encyclopedia of Law, 496; *Wilson v. Hart*, 98 Mo. 618. (8) There can be no estoppel in this case. *Acton v. Dooley*, 74 Mo. 63; *Spurlock v. Sproule*, 72 Mo. 505; *Bates v. Perry*, 51 Mo. 449; *Chapman v. Crooks*, 41 Mich. 595; *Spring v. Houston*, 52 Cal. 442; *Hartung v. Witte*, 59 Wis. 285.

BURGESS, J.—On the eleventh day of April, 1874, Thomas A. Brown was the owner in fee of the land in controversy, at which time he conveyed to his son, Joseph A. Brown, the tract of land described in his deed of that date, which is as follows: "Beginning at the northwest corner of the northeast quarter of section 6, in township 56 of range 35, thence south twenty chains, thence east twenty-five chains to the center of the state road, thence north twelve and one-half degrees east, twenty and fifty-hundredths chains along the center of road to Auther's line, thence west to Auther's line twenty-nine and eighty-hundredths chains to the beginning, containing fifty-four and eighty-hundredths acres;

also thirteen and fifty-one hundredths acres in the same quarter, beginning at the center of the state road six and fifty-hundredths chains, south twelve and one-half degrees west of the southeast corner of the above named fifty-four and eighty-hundredths acres, thence east twelve chains, thence north eleven and fifty-hundredths chains, thence west eleven and fifty-hundredths chains to center of road; thence south twelve and one-half degrees west, eleven and sixty-one hundredths chains to the place of beginning."

Joseph A. Brown died May 22, 1882, leaving the defendant Eliza, his widow, and Francis T. and Margaret Brown, his children, the only heirs at law. The widow subsequently and before the commencement of this suit, married her codefendant Richard Highsmith.

On March 17, 1883, Thomas A. Brown conveyed to William L. Dittimore by warranty deed a tract of land described as follows: "Beginning at a point twenty chains south of the northwest corner of the northeast quarter of section 6 in township 56 of range 35, thence east twenty-five chains to the center of the public road, leading from Weston to St. Joseph, S. twelve and one-half degrees west three and thirty-two hundredths chains, thence east twelve chains, thence north six and fifty-hundredths chains, thence east to the east line of the west half of the northwest quarter of section 5," etc. This deed embraces a part of the same land conveyed by Thomas A. Brown to his son Joseph A. Brown.

The plaintiffs in this action claim by *mesne* conveyances from Dittimore.

On June 11, 1883, Thomas A. Brown executed another deed to Joseph A. Brown, who was then deceased, in which the land plaintiffs contend was intended to be conveyed by the original deed is described as follows: "Beginning at the center of the public road leading

from St. Joseph to DeKalb at a point twenty chains south and twenty-five chains east of the northwest corner of the northeast quarter of section 6 in township 56 of range 35; thence south twelve and one-half degrees west three and thirty-two hundredths chains; thence east twelve chains, thence north seven and sixteen-hundredths chains, thence west ten and forty-four hundredths chains to the center of the public road aforesaid; thence south twelve and one-half degrees west four chains to the beginning, containing eight and three-hundredths acres.''

This deed also contained the following statement: ''This deed is made to correct an erroneous description of a tract of land described as containing thirteen and fifty-one hundredths acres in a deed dated April 11, 1874, and recorded in 175, page 215.''

The land conveyed by Thomas A. Brown to Joseph A. was in two tracts. The large tract was bottom land and used for cultivation, the smaller tract was for building site. It also had a spring upon it. The small tract was north of a private road leading east to a cemetery from a public road, which ran nearly north and south. This private road had been used for many years, and on the south of it was a fence inclosing plaintiff's land on the north. Before the original conveyance from T. A. to Joseph A. Brown, a survey of the land was made in their presence to obtain a description of it so as to accurately describe it in the deed thereafter to be made.

Plaintiffs claim, and the proof tends to show, that Joseph recognized a line fourteen feet north of the fence running east and west to be the line intended as the south boundary of said tract; that he had repeatedly stated that said line was his southern boundary line dividing his land from that of his father, Thomas; that the mistake in writing the description in the deed so

as to locate said line south of said private way was the mutual mistake of both Thomas and Joseph, and that it was not discovered during the lifetime of Joseph.

The prayer of the petition is that the court declare that the true line agreed upon and intended to be described in said deed from Thomas to Joseph was the north line of said private road; that the description in said deed be reformed and declared to express the true intent and meaning of the parties thereto; that plaintiffs' title be quieted and defendants perpetually enjoined from setting up any claim to plaintiffs' land and for all proper relief. The answer was a general denial. The trial court made a finding of facts, dismissed the petition, and plaintiffs appeal.

The evidence shows that Thomas A. Brown and his son, Joseph, lived for many years in the same locality and very near each other. It also shows that plaintiffs, and those under whom they claim title, had been in actual possession and occupancy of the land claimed by them from the time of the execution of the deed to Joseph A. Brown by his father Thomas A. Brown and by the latter to Dittimore down to the commencement of this action.

The deed from Thomas A. to Joseph, after describing the larger tract, proceeds as follows: "Also thirteen and fifty-one hundredths acres," then describes by metes and bounds the last named tract within which description there is contained the exact quantity of land called for in the deed. There is no question but that Joseph always claimed to have owned thirteen and fifty-one hundredths acres of land on the east side of the main road. There was no direct evidence showing that there was any mistake made by the scrivener who wrote the deed from Thomas to his son, in the description of the land, or that the parties thereto were mistaken as to the description. The person who wrote the

deed was not called as a witness, and Joseph being dead his father was not a competent witness, and was not permitted to testify. They were the only persons who knew anything about the description of the land intended to be conveyed, except the surveyor who ran the line for the parties to the deed before its execution for the purpose of ascertaining the true boundaries of the land, and he, also, was deceased.

Joseph's brother John testified that he and Joseph built a fence on the south line; that Joseph selected the place to build the fence and that while they were at work on it Joseph said that the fourteen foot strip of ground north of the fence belonged to his father. This witness also stated that one Kemper, who was county surveyor, surveyed the land for Joe and his father, and that he subsequently saw a corner stake at the southeast corner of the tract of land in controversy.

Felix Brown, also a brother of Joseph, and one of the chain carriers at the time the survey was made by Kemper, testified that they commenced the survey of this tract in the center of the public road at the northwest corner of the land; then ran south in the center of the road and drove a "stob;" and then went east a certain distance and drove another "stob." He also stated that the "stob" driven in the center of the road was about a rod north of the fence between Joseph and his father. Several other witnesses also stated that Joseph had said to them that the line between him and his father was the north line of the private road running east and west between his land and that of his father; and north of the fence which separated their lands and which road led to the cemetery. Other witnesses testified that the widow of Joseph had stated that the dividing line between the land of her deceased husband and that of his father, was the northern boundary of the private road leading

to the cemetery; but she denied ever having made such a statement, and further stated that she never knew where the line was.

There seems to be no question but that the southwest corner of this tract was the center of the public road near the southeast corner of the large tract. According to defendant's theory of the case, their southern boundary line must necessarily be several feet south of the fence between Joseph and his father. It is manifest from the evidence that Joseph nor his father ever knew really where the south line was, Joseph sometimes claiming that it was the fence running east and west on the south side where the line was supposed to be, while there is some evidence which tends to show that the line was about fourteen feet north of the fence and at the north line of a private road running east and west. But if either of them is the true line, the tract does not contain the number of acres called for by the deed, but, to follow the description in the deed, the starting point is six and fifty-hundredths chains south of the south line of the large tract, running thence east on land occupied and cultivated by the grantor Brown and those claiming under him ever since and before its execution. The boundaries as claimed by plaintiff to be the proper boundaries only embrace eight and three one-hundredths of an acre, which they say was intended to be conveyed, while the boundaries as described in the deed contain exactly thirteen and fifty-one hundredths acres.

About the only evidence as to where the true line is, is that of John and Felix Brown. As to the proof of the statements of Joseph in regard to the location of the true line, it is by no means satisfactory. Felix was one of the chain carriers when the two tracts purchased by Joseph from his father were surveyed, but was unable to state, with any degree of accuracy, the location

of any of the lines or corners of the small tract. We do not attach any importance to the fact that Thomas A. Brown, as administrator of the estate of his deceased son, inventoried the thirteen and fifty-one hundredths acre tract, as described in the original deed by him to the deceased son, as he simply did his duty in inventorying the land according to the title papers, notwithstanding he may have known at that time the land was incorrectly described in the deed. Moreover it does not appear up to this time, any question had ever arisen as to the correctness of the description.

Nor are we of the opinion that the deed from Thomas A. Brown to Joseph A., made after the latter's decease, in correction of the original deed, and describing the land differently from what it was in the first deed, and, as plaintiffs claim it should have been described in that deed, is of any significance, for, even though there was a mutual mistake in the description of the land, it could not be corrected without the consent of all the parties thereto or their heirs and the act of Thomas A. was merely gratuitous and was of no force or effect.

It is well settled law in case of fraud, mistake of the party drawing a deed in describing the land intended to be conveyed, or mutual mistake between the parties to the deed that a court of equity will afford relief. But it is equally as clear that the mistake must be shown by testimony so clear and convincing as to leave no hesitancy in the mind of the chancellor of its existence. *Sweet v. Owens*, 109 Mo. 1, and authorities cited. *Pennybacker v. Laidley*, 33 W. Va. 624; *Moore v. Giesecke*, 76 Tex. 543.

In *Andrews v. Andrews*, 81 Me. 337, wherein the plaintiff sought to reform a warranty deed, it was held that: "To sustain her bill under the equity head of mistake, with no allegation of fraudulent or other in-

equitable conduct on the part of the defendant, the plaintiff must prove that the deed not only misdescribes the real estate which she sold and intended to convey, but also that which the defendant understood he purchased,—that the mistake was mutual. *Buttman v. Hussey*, 30 Me. 263; *Burr v. Hutchinson*, 61 Me. 514; *National Traders' Bank v. Ocean Ins. Co.*, 62 Me. 519. In other words, that when the deed was executed, both parties understood it to convey the identical land which the bill alleges it ought and would have conveyed, had not the alleged mistake occurred; and that the reformation, in some, at least, of the particulars alleged, is necessary in order that the deed may correctly speak the actual intention of both parties and thereby perfect and perpetuate their real agreement which the deed in its present form fails to express." *Andrews v. Ins. Co.*, 3 Mason C. C. 6; *Kilmer v. Smith*, 77 N. Y. 226; *Ins. Co. v. Davis*, 131 Mass. 317.

So it has been held that practical location and long continued recognition and acquiescence in a boundary are conclusive, not upon the theory that they are only evidence of a parol agreement establishing the line, but because they are of themselves proof that the location is correct, and of so controlling a nature as to preclude the contrary. *Baldwin v. Brown*, 16 N. Y. 359; *Reed v. Farr*, 35 N. Y. 113; *Blassingame v. Davis*, 68 Tex. 595.

But in the case in hand the evidence does not show that any particular line was ever recognized by Joseph and his father as the true line; some of the witnesses stating that Joseph said the fence was the true line, while others said fourteen feet north of the fence, and still others, the north line of a neighborhood road which ran parallel with and on the north side of the fence. We do not think that the evidence adduced brings the case within the rule announced by the au-

thorities before cited; that is, that it, in the first place, shows that there was a mutual mistake or mistake of the scrivener who drew the deed in the description of the land intended to be conveyed, nor does it show, with any certainty, as to where the south line was intended to be located, and in such a case the boundaries called for in the deed must prevail.

We, therefore, conclude that the plaintiffs have not made out their case, and as the rule of this court has been that it will defer in such cases to the finding and judgment of the trial court, unless it appears that the preponderance of the evidence is against such finding, the judgment will be affirmed. The rule thus announced should be invoked in this case. *Gottschalk v. Kircher*, 109 Mo. 170; *Rawlins v. Rawlins*, 102 Mo. 563. The judgment should be affirmed. It is so ordered. All of this division concur.