MINNIE C. TOZIER

*vs.*

ANDREW J. PEPIN AND ALYCE S. PEPIN.

Kennebec.   Opinion, October 16, 1943.

*McLean, Southard & Hunt,* for the plaintiff.

*Locke, Campbell & Reid,* for the defendants.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

MURCHIE, J. This is an appeal from the decision of a Justice of the Superior Court sitting in equity. In so far as it is based upon the determination of factual issues, the law is established that it should not be reversed unless clearly wrong. This principle was declared in *Young* v. *Witham,* 75 Me., 536, and has been followed in a long line of decisions in this Court, one of the last of which is *McDonough* v. *Portland Savings Bank et al.,* 136 Me., 71, 1 A. (2d), 768.

The bill as filed sought in the alternative to have a bond for a deed "rectified and reformed in accordance with the actual bargain and agreement for sale and conveyance," or declared forfeited because of "defendants' failure to comply with . . . the terms as set forth," but counsel for the plaintiff expressly declared in their brief and at oral argument that the question of forfeiture "is not being pressed on this appeal," so that we give consideration only to whether denial of the claim for reformation of the instrument was proper.

The pleadings, disregarding a demurrer inserted in defendants' answer upon which no ruling was made, seem to present very definite issues of fact. Plaintiff's allegations briefly summarized are that the agreement intended to be expressed in the bond was for the sale of property at a price of $3,400 "with interest on all unpaid balances" at the rate of 5% per annum, with each monthly payment applied first to interest and then

to principal, and that the interest provision was omitted from the bond by mutual mistake. All this, except the $3,400 price, the defendants deny and assert that the transaction contemplated payment "in monthly installments without interest" and that plaintiff's salesman induced them to purchase the property, in part, by representation that on the agreed schedule of payments they would "own the place" in nine years.

There is very definite conflict of testimony upon both factual issues. Plaintiff's real estate agent and his salesman declare that interest was mentioned, discussed and agreed upon at a stated rate of 5%. The salesman does not claim that the method of computation and times of payment were discussed, but the agent supports the exact allegation of the bill that each monthly payment was to be applied first to interest, with the excess used in reduction of principal. As to whether a term of nine years was stated, the conflict is between the defendants and the salesman alone. The agent saw nothing of the defendants until the "final offer of $3,400 with thirty dollars a month was made."

The decree presents no factual finding in terms but recites merely that the bill "be dismissed without costs." The plaintiff argues therefore that it may be based either on acceptance of the testimony presented by the defendants as true, in which case it entirely lacks support in *credible* evidence, or on misinterpretation of the legal principle which governs cases where a written instrument is sought to be reformed. Either claim, substantiated, would demonstrate that the Justice below decided a question of law and exclude operation of the principle declared in *Young* v. *Witham*, supra.

Plaintiff's contention that the evidence of the defendants is not *credible* is based entirely on the fact that they negotiated with Augusta Savings Bank to arrange a mortgage on the property, presumably to pay the plaintiff in full and secure her conveyance, before any issue arose about the payment of interest. Assertion is that this shows conclusively, contrary to their

sworn testimony, that they must have expected to pay interest to the plaintiff and were seeking a more convenient arrangement, and that common sense is outraged by the suggestion that when purchasing property by instalment payments without interest, they would seek to negotiate a mortgage with its inevitable interest requirement.

There is nothing abnormal in the trade to which the defendants depose. They sought the plaintiff's agent, not to buy a house, but to rent one. They were persuaded to purchase by the salesman, although his direct testimony seems designed, whether or not intentionally, to create the impression that they approached him intending to buy. Against an asking price of $3,800, they offered $3,500, with payments of $25 per month. When a monthly minimum of $30 was suggested, the defendant Andrew J. Pepin said he would pay $3,400. The plaintiff preferred this. So much is beyond dispute, as also that the defendants were to pay taxes from the date of their trade, carry insurance, and reimburse the plaintiff for the insurance then prepaid, although this last item was not mentioned in the bond. It cannot be said, as matter of law, that the trier of the fact might not accept the testimony of the defendants as representing in truth their understanding of the trade made. They were committed by the terms of the bond, as the Chief Justice noted at oral argument, to the arrangement for a mortgage at some time during its life.

It would require more than a modicum of credulity to accept the testimony offered on behalf of the plaintiff. Her agent had dealt in real estate for many years and was experienced in the preparation of bonds and other title documents. He prepared the bond and a separate instrument containing defendants' promise to pay. The essential parts of these documents read, respectively, that the $3,400 price is payable:

"$50.00 on delivery of this bond, and $30.00 Oct. 1st., $30.00 Nov. 1st., $30.00 Dec. 1st., and $50.00 Dec. 10th.,

and Jan. 1st., 1942 $30.00, Feb. 1st., $30.00, March 1st., $30.00, Apr. 1st., $30.00 and Apr. 10th. $75.00, and May 1st., and the first day of each month thereafter $30.00 or more until a suitable amount has been paid, when a deed will be passed and mortgage arranged,"

and:

"in amounts as specified in said bond."

It might not be difficult to believe that a simple provision for interest at 5%, even with recital that it be payable in annual, semi-annual or quarterly payments, could be unintentionally omitted, but the reformation sought is insertion of language calling for the payment of interest on all unpaid balances with deduction from the monthly payments, no reference being made to the two $50 and the single $75 instalments. It is difficult to believe that an interest provision so complicated as would be necessary to evidence a mutual understanding for interest on a part but not all could be overlooked. For the separate instrument the language used seems indicative of a transaction involving no interest. Had interest been contemplated the words "with interest as stated in said bond" would have been sufficient to incorporate both instalment and interest recitals, but the written document says only "in amounts." The document sought to be reformed was prepared, referred to in a companion document and read to the principal who signed it. To believe that provision for interest was omitted by mistake requires acceptance of the theory that it was overlooked on three occasions. On the question, to quote what Chief Justice Peters said in *Linscott* v. *Linscott et al.*, 83 Me., 384, 22 A., 253, while the agent swore strongly, there is lacking in his testimony "that manner of statement which impresses belief."

Startingly different transactions are presented by the bond as it stands and as it is sought to be reformed. It calls for a price of $3,400, all but $175 of which is payable in instalments

of $30 a month. Computing interest payable on the $30 payments only, the defendants would have owed more than $970 as unpaid principal at the expiration of nine years, whereas without interest they would then have paid the purchase price in full. Counsel for the plaintiff cite us to no case, nor have we been able to discover one, where a written instrument has been reformed to impose upon one party a trade so widely at variance from that subscribed. As stated in *Andrews* v. *Andrews*, 81 Me., 337, 17 A., 166, when the parties have variant understandings of a trade, relief should:

"take on the form of cancellation, rather than reformation."

Here an earlier case, *Young et al.* v. *McGowan*, 62 Me., 56, is cited, wherein the same thought is expressed in the words:

"A mistake on one side may be a ground for rescinding a contract, or for refusing its specific performance; but it cannot be a ground for altering its terms."

Perhaps the closing words of the opinion in the *Young* case are also pertinent:

"It is no part of the duty of a court of equity to relieve against ... negligence ... , or to correct ... blunders .... "

Assuming the true fact to be that the plaintiff's agents contemplated interest, notwithstanding the strong probability that the decree evidences acceptance of the factual contentions of the defendants by the Justice who heard the cause and had the opportunity to observe the witnesses as their testimony was given, the record would not justify a decree ordering the bond reformed in accordance with the prayer stated in the bill.

*Appeal denied.*
*Decree below affirmed.*