Paul R. STROUT et al.

v.

Malcolm D. GAMMON et al.

Supreme Judicial Court of Maine.

Argued Feb. 28, 1995.
Decided June 2, 1995.

Richard J. Abbondanza (orally), Valerie S. Libby, Hopkinson & Abbondanza, P.A., Portland, for plaintiffs.

Martin Schindler (orally), South Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

ROBERTS, Justice.

Paul R. and Karen Strout appeal from a judgment entered in the Superior Court (Cumberland County, *Fritzsche, J.*) that determined the boundary line between the Strouts' land and land of Malcolm D. and Annette M. Gammon to be as depicted on a survey plan prepared by surveyor Timothy DeFilipp. The court's previous decision adopting a different plan by Wayne Wood had been set aside on appeal, *Strout v. Gammon*, 629 A.2d 43 (Me.1993) (*Strout I*). On this appeal, the Strouts argue that the court erred in adopting the DeFilipp plan and in not allowing them an opportunity to present evidence on remand. We affirm the judgment.

We quote the facts as stated in *Strout I*:

Paul and Karen Strout own an improved parcel of land in Gorham and Malcolm and Annette M. Gammon own an adjacent, improved parcel of land. At the Strouts' request, [Wayne] Wood surveyed the properties and prepared the Wood Survey plan depicting his findings. This survey plan depicted the "buffer zone" boundary between the parties' properties closer to the Gammon residence than previously thought and, as a result, it depicted a storage building, built by Gammon, encroaching on the Strouts' property. Further, Wood determined that title to a triangular parcel of land (the "gore") at the rear of the parties' lots was held by Laurette (Strout) Jordan. The gore, as depicted on the Wood Survey, is bisected by a line[,] and the Gammons' pool and well are located on the larger, four-sided parcel within the gore. At the time the survey was done, the Strouts had no actual or colorable claim to the gore. Subsequently, Paul Strout secured the signature of Laurette Jordan, his stepmother, on a deed he prepared purporting to convey the gore to him.

Following a breakdown of settlement discussions between the parties, the Strouts filed a three-count amended complaint containing: (1) Count I: a real action at law, *see* 14 M.R.S.A. §§ 6701 *et seq.* (1980 & Supp. [1994]); M.R.Civ.P. 80A; 2 Field, McKusick & Wroth, *Maine Civil Practice* §§ 80A.1–80A.3 (2d ed. 1970 & Supp.1981); (2) Count II: trespass; and (3) Count III: nuisance. The Gammons answered, counterclaimed and filed a third-party action against Laurette Jordan. The Gammons' five-count amended counterclaim contained counts for (1) Count I: slander of title; (2) Count II: intentional infliction of emotional distress; (3) Count III: declaratory judgment; (4) Count IV: negligent interference, removal or destruction of monuments, *see* 14 M.R.S.A. § 7554 (1980); and (5) Count V: reformation.

The Superior Court granted a summary judgment to the Strouts and Jordan on Counts I and II of the counterclaim. Counts III and IV were dismissed against

Jordan[,] and Count IV, as directed at the Strouts, was withdrawn by the Gammons. *Strout I*, 629 A.2d at 44–45. From a judgment in favor of the Strouts and Jordan after a trial on the remaining counts, the Gammons successfully appealed. After remand and receipt of additional evidence, the court found in favor of the Gammons. Only the Strouts appeal that second judgment.

■ As stated in *Strout I*, we remanded Counts I and II of the amended complaint and Counts III and V of the amended counterclaim for the court's "consideration of all the evidence offered and such additional evidence as the parties may choose to offer." *Strout I*, 629 A.2d at 47. Consequently, we review on appeal the entire record of the first trial, plus the testimony of the Gammons' surveyor, DeFilipp, and the three exhibits introduced at the second trial. In the absence of a request for findings of fact, we assume the court made all of the findings necessary to its decision, and we determine whether those assumed findings are supported by evidence in the record. *See Blackmer v. Williams*, 437 A.2d 858, 861 (Me. 1981).

■ The Strouts complain that the court unconditionally adopted the DeFilipp plan without sufficient justification. On the contrary, the DeFilipp plan was amply supported by evidence in the record. The testimony of Laurette Jordan established that she and her husband intended to convey all the remaining land they owned to the Hornes, who in turn conveyed the property to the Gammons. The deeds in evidence and the testimony of Wood, the Strouts' surveyor, proved that Laurette Jordan and her husband owned the land remaining after their conveyance of land to the Town of Gorham. Thus, the so-called gore belonged to the Gammons, and Laurette Jordan has not challenged that determination. *Slipp v. Stover*, 651 A.2d 824, 827 (Me.1994).

■ Although neither party could clearly establish the location of their common boundary by deed description, there is ample evidence to support the Gammons' claim to the so-called buffer zone. There is evidence that the monument controlling the location of the Gammons' southeast corner was formerly located near the end of a row of bushes shown on the Wood plan and near the southeast corner as shown on the DeFilipp plan. *See Milligan v. Milligan*, 624 A.2d 474, 478 (Me. 1993). There is evidence of use and occupation of the buffer zone by the Gammons and their predecessors well beyond the period necessary to establish title by adverse possession. *McMullen v. Dowley*, 483 A.2d 698, 700 (Me.1984). There is evidence that Paul Strout's mother and predecessor in title, Ruth Day, in a 1966 conveyance, acknowledged that the northwest corner of the lot designated as owned by Cecile Caron was also the northeast corner of the Gammon lot. *See Marja Corp. v. Allain*, 622 A.2d 1182, 1184–86 (Me.1993). Finally, there is evidence that Paul Strout himself previously acknowledged that the buffer zone belonged to the Gammons. *Id.*

■ The Strouts also contend that they were denied an opportunity to present additional evidence at the second trial. The record does not support their contention. Notice of the scheduled hearing was sent at least ten days before the scheduled hearing date. The Strouts told the court they would like to present further testimony from Wood, although he was not present. We cannot say that they were denied the opportunity, and we cannot rely on an unreported conference in chambers to excuse their failure to present the witness. *State v. Shuman*, 622 A.2d 716, 718 (Me.1993). Moreover, their offer of proof does not support their claim of prejudice. In sum, we conclude there was no error on the part of the trial court.

The entry is:

Judgment affirmed.

All concurring.