Bartlett *v.* Judd.

————•●•————

## BARTLETT *vs.* JUDD.

A sheriff, at the time of selling the real estate of D. T. on execution, *excepted* and reserved 63 acres of land formerly owned by D. T., but then belonging to W. S. He executed a certificate of the sale, to B. the purchaser, in which he described the premises sold, as " being the whole of lot number four, &c. *excepting* and reserving therefrom the lands conveyed by D. T. to W. S." &c.   He subsequently gave to B. a deed of the land purchased by him, describing it in the same manner.   In fact D. T. never sold and conveyed any land to W. S.   He

Bartlett *v.* Judd.

had, prior to the sheriff's sale, conveyed the 63 acres to M., and M. had conveyed the same to W. S., who owned the land at the time of the sale. In an action by B. against a grantee of W. S. to recover the possession of a portion of the 63 acres, on the ground that the 63 acres were not embraced in the exception, but were sold, with the rest of lot No. 4, and were bid off by B. and conveyed to him by the sheriff's deed, parol evidence was received which clearly showed that the 63 acres were reserved by the sheriff, at the time of the sale, and that it was intended and supposed, at the time, that the exception in the certificate and deed embraced the 63 acres. *Held* that this was a proper case for a reformation of the sheriff's deed; it appearing that the description of the premises, therein, was founded on a *mistake;* and the rights of creditors not being in question.

*Held also,* that, both parties claiming under the same title, were in privity, so as to authorize the interposition of a court of equity; and that the code (§ 150) authorized the defense to be set up, and the granting to the defendant of the affirmative relief to which he was entitled. (§ 274.)

*Held further,* that the statute requiring bills for relief, in all cases not otherwise provided for, to be filed within ten years, was not a bar to the relief sought by the defendant; that he, being the equitable owner, and in possession, of the premises, the statute, as a bar to his equitable right, would not begin to run, until actual *eviction* by the holder of the legal title.

The equitable owner, in possession of the premises, is, under such circumstances, justifiable in waiting until an attempt shall be made by virtue of the mistaken deed, to disturb his possession.

APPEAL from a judgment entered upon the decision and report of a referee. The action was brought to recover possession of about two and a half acres of land. It was commenced in March, 1854.

In January, 1835, the plaintiff recovered a judgment in the supreme court, against Daniel Tuttle, for $147.51. An execution was issued and returned unsatisfied. In February, 1834, Tuttle became the owner in fee of land described as lot four in Wellsville, Allegany county, containing $131\frac{83}{100}$ acres. Tuttle, soon after, sold and conveyed a small portion of the lot to Sheldon Brewster; another small portion to John B. Church; and another portion to George B. Jones. On the 23d of July, 1834, Tuttle conveyed by deed, to one John Moon, about 63 acres of the lot, describing it by metes and bounds. The 2½ acres were included in the 63 acres. The deed to Moon was duly recorded July 25. On the 1st of August, 1837, Moon conveyed the 63

acres, by deed, to William Smith. This deed was duly acknowl-
edged on that day, and recorded January 13, 1853. On the 22d
of May, 1839, the plaintiff caused an alias *fi. fa.* to be issued on
his judgment, to the sheriff of the county, by virtue of which
the sheriff proceeded to advertise and sell real estate of the de-
fendant Tuttle. The property was sold on the 13th day of Au-
gust, 1839, to the plaintiff Bartlett. The sheriff, on the same
day, made, executed and filed, in the office of the county clerk,
a certificate of the sale, in which he described the premises sold,
thus : " All that certain piece or parcel of land described as
situate and lying in the town of Scio, county of Allegany and
state of New York, being the whole of lot number four, township
second, and range first, Morris reserve on the Willing and Fran-
cis tract, *excepting* and reserving therefrom the lands conveyed
by David Tuttle to Sheldon Brewster, Norman Perry, John B.
Church and William Smith, as by reference to the deeds will
more fully appear. (There is supposed to be about forty-eight
acres unsold to them.") On the 13th day of November, 1840,
the sheriff executed to the plaintiff as purchaser, a deed of the
land sold, describing it as it had been described in the certifi-
cate of sale. The deed was acknowledged and recorded on the
same day. The defendant Judd was in possession of the prem-
ises claimed in this action, at the commencement thereof, and
at the time of the trial, under a title derived, by mesne convey-
ances, from William Smith. Tuttle never sold and conveyed
any land to William Smith. He conveyed the 63 acres to Moon,
and Moon conveyed to Smith, and at the time of the sheriff's
sale, Ephraim A. Smith, a brother of William, was in possess-
ion of the 63 acres as the agent of William.  ·

The defendant, after denying the allegations in the complaint,
answered new matter. He stated, substantially, that no sale was
in fact made of the 63 acres, by the sheriff; that this land was ex-
pressly reserved, as land belonging to and owned by Wm. Smith.
He alleged that such should have been the exception and re-
servation in the deed from the sheriff to the plaintiff, and he
asked that the deed be reformed and corrected so as to reserve
and except the said land, &c. &c. The plaintiff, in his reply,

denied the facts stated in the answer; and as to the claim that the deed be reformed, he set up the ten years' statute of limitations.

Upon the trial the referee heard parol evidence, under objection and exception by the plaintiff, touching the exceptions and reservations made by the sheriff at the time of the sale. It was clearly proved that the 63 acres—the land then owned by William Smith—was excepted by the sheriff at the sale, and the other small lots which Tuttle had conveyed to other persons. The referee decided, as conclusions of law, 1st. That the plaintiff's deed and certificate should be construed as if the words "by Daniel Tuttle" were left out, and read as follows, to wit, "excepting and reserving therefrom the lands conveyed to William Smith," and that the plaintiff acquired no title to the premises in dispute under the said deed, by reason of the same being excepted therein from the lands conveyed. 2d. That the deed was void by reason of being given before the expiration of fifteen months from the time of the sale. 3d. That the defendant was entitled to judgment in the usual form, with costs. The plaintiff excepted to these decisions; and judgment having been entered, he appealed to the general term.

*A. P. Lansing*, for the plaintiff.

*M. Grover*, for the defendant.

*By the Court*, MARVIN, J.  The referee decided, as a conclusion of law, that the words in the sheriff's deed and certificate of sale, should be construed as if the words "by Daniel Tuttle" were left out. This would leave the exception to apply to the land conveyed to William Smith by Moon. I do not understand that this decision proceeded upon any principles relating to the reforming of the deed; but the referee gives to the deed a *construction* by which he rejects the words "by Daniel Tuttle." So understanding the decision, I am not prepared to concur. "If there are certain particulars, once

sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant." (*Jackson* v. *Clark,* 7 *John.* 223.) It seems to me that the present case cannot be brought within this rule. All the description we have in this case is, "the land conveyed by Daniel Tuttle to William Smith." This will be the reading, rejecting what has reference to lands conveyed to other persons. There is no other description of the land intended to be conveyed. It is simply land conveyed *by Tuttle* to Smith. Strictly, the whole description is false, and mistaken ; as in fact Tuttle never conveyed any land directly to Smith. He actually conveyed the land to Moon, and Moon conveyed it to Smith. And there can be no doubt, in the light of all the evidence now presented, that the 63 acres of land were not sold by the sheriff, and that it was intended and supposed, at the time, that the exception embraced it. But I do not think that we can reject any of the words used in the certificate or deed. We must have regard to certain other rules. "When the description of the estate intended to be conveyed includes several particulars, all of which are necessary, to ascertain the estate to be conveyed, no estate will pass, except such as will agree to every description." Thus, if a man grant all his estate in his own occupation in the town of W., no estate can pass except what is in his own occupation and is also situate in the town of W. (*Jackson* v. *Clark, supra.*)

In *Roe* v. *Vernon,* (5 *East,* 51,) the previous English cases are stated, and the rule is laid down, that when there is a grant of a particular thing, once sufficiently ascertained by some circumstances belonging to it, the addition of an allegation mistaken or false, respecting it, will not frustrate the grant; but where a grant is in *general* terms, then the addition of a *particular* circumstance will operate by way of *restriction* and modification of such grant. Numerous cases are referred to by Lord Ellenborough in illustration of these rules; and our cases proceed upon the same distinctions. (*See Jackson* v. *Loomis,* 18 *John.* 81 ; *S. C.* 19 *John.* 448.)

Bartlett *v.* Judd.

Lord Hardwick, in *Gascoin* v. *Barker*, (3 *Atk.* 9,) cited in 5 *East, supra*, says, "When a man does not make a certain definitive description, it is very difficult for courts of justice not to construe subsequent restrictive words as explanatory of the former." In the present case we have no description of the land, other than the land *conveyed by Daniel Tuttle.* The words, "by Daniel Tuttle" are *restrictive*, and, in my opinion, cannot be rejected, in giving construction to the instrument.

If the general decision of the referee was right, it will not be necessary to reverse the judgment. It is insisted, by the defendant's counsel, that in a legal sense the land was conveyed by Tuttle to Smith, through Moon, Tuttle's immediate grantor ; that the covenants of Tuttle run with the land and enure to the benefit of Smith. I am not prepared to say that this position is not sound. The grant by Tuttle was to Moon, his heirs and *assigns*, and it may be that the language used in the exception should be construed as including the land conveyed by Tuttle to Moon and by Moon to Smith. But I will not pursue this suggestion.

The defendant made a clear case entitling him to a reformation of the deed from the sheriff to the plaintiff, unless the case is one to which the principles relating to the *reformation* of deeds and contracts do not apply ; or unless the ten years' limitation statute, in equitable cases, interposes and bars him. The plaintiff was the purchaser at the sheriff's sale, and the certificate of sale was made to him, followed by the sheriff's deed. I can see no objection to the jurisdiction of a court of equity, at the suit of Smith or his grantees, to afford relief by reforming the deed of the sheriff to the plaintiff. The judgment was a lien upon the 63 acres, and the land could have been sold. It, and other small parcels, had however, been conveyed to purchasers prior to the sale, and the remaining lands of Tuttle, the judgment debtor, were sufficient to satisfy the judgment, and the land conveyed to Smith was not sold. No creditor of Tuttle redeemed. The rights of creditors are not, therefore, in question. *Dike* v. *Lewis*, (4 *Denio,* 237,) and *Tallman* v. *White*, (2 *Comst.* 66,) relate to sales of land made

by the comptroller, and have no application to the present case. *Mason* v. *White*, (11 *Barb.* 173,) is cited by the plaintiff's counsel.   In that case a question arose as to the particular parcel of land which the sheriff sold and conveyed; there being two parcels answering more or less nearly to the description of the land in the sheriff's certificate of sale and in his deed. The land was purchased by the judgment creditor, and he transferred the certificate of sale to a third person, to whom the sheriff executed the deed.   The sheriff was examined as a witness before the referee, with a view of ascertaining which parcel of land he sold, or intended to sell, and to which the description applied.   Much evidence of this character was given. The court, in the 5th district, upon appeal, reversed the judgment.   Justice Allen examined the case, and the questions raised, with his usual industry and ability, and laid down some rules touching sales and deeds by sheriffs, and made certain distinctions between them and deeds *inter partes*.   He says that resort cannot be had to extrinsic evidence to establish the intent of the officer making the sale; that deeds of bargain and sale between man and man may, to some extent, be explained by showing the intent of the parties; and in some cases, if the deed, by fraud or mistake, fails to express the true intent, it may be reformed to express such intent.   He adds: "It is very clear, however, that a deed of a sheriff cannot thus be reformed, and that if it follows the notice and certificate of sale, it cannot be in any respect varied for any reason, or made operative except according to its terms."   This position was not necessary to the decision of the case.   No question touching the reforming of the deed was involved in the case.   Further on, the learned judge, after reviewing and remarking upon, cases *inter partes*, and showing how far and when evidence of the intent of the parties may be given, adds, "but such cannot be the principle applicable to a sale by a public officer, under judicial process, in which persons other than the officer and purchaser are interested;" and he refers to *Jackson* v. *De Lancy*, (13 *John.* 552.)   In that case the sheriff sold, on execution, two parcels of land, described by metes and bounds, "and also all other the

lands, tenements and hereditaments whereof William, Earl of Stirling, was seised in the county of Ulster." It was held by the court that no title to any lands passed, except those described; that it was altogether inadmissible that the property of a defendant should be swept away on execution in so loose and undefined a manner. In *Jackson* v. *Rosevelt*, (13 *John.* 97,) it was held that a sheriff's deed describing the land as "all the lands and tenements of the defendant situate, lying and being in the Hardenburgh Patent," was void for uncertainty. Justice Allen does not refer to any case to sustain his position that a deed of a sheriff cannot be reformed. The cases *supra* have no application to such question, and it was not necessary to pass upon the question, in *Mason* v. *White.*

It is not necessary, in this case, to say whether the sheriff's certificate can be reformed, or whether his deed to a redeeming creditor, or in a case where a creditor or creditors, other than the purchaser at the sale, have, under the statute, acquired rights, can be reformed. But suppose A. has two farms, bound by the judgment, and the sheriff advertises both of them for sale by virtue of the execution, and on the day of sale sells to the judgment creditor one of the farms, for an amount sufficient to satisfy the execution, and by mistake includes both farms in the certificate to the purchaser, and at the end of fifteen months, no one redeeming, executes to the purchaser a deed of both farms, pursuant to the certificate. May not A. resort to a court of equity and have the mistake in the deed corrected? I certainly think he may. The present case is quite as strong as the case supposed. The evidence is clear and satisfactory that the sheriff did not sell the 63 acres. It was excluded at the sale, and there is no question but that all the bidders so understood. We have no difficulty in seeing how the mistake in the certificate and deed occurred. Smith, at that time, was the owner of the 63 acres, and his brother was in possession; and the sheriff, probably, without examining the chain of title, supposed that *Tuttle had conveyed to him*, and that he, the sheriff, had therefore included it by the exception in the deed. The defendant claims title, by mesne conveyances, from

Tuttle, and the plaintiff claims under the Tuttle title. The parties are therefore in privity, so as to authorize the interposition of a court of equity. (1 *Story's Eq.* § 145.) The code, § 150, authorizes the defense, and the granting to the defendant of the affirmative relief to which he was entitled, (§ 274.)

In my opinion the defendant made a case justifying and requiring a reformation of the deed, unless the ten years' statute of limitations in equity is a bar to such relief. The statute declares that " Bills for relief on the ground of fraud shall be filed within six years after the discovery by the aggrieved party of the facts constituting such fraud, and not after that time." (2 *R. S.* 201, § 51.) Is it quite clear that the present case may not be brought within this provision? There is no evidence of any *discovery* by the defendant or those through whom he claims, until the commencement of this action. The plaintiff was not present in person, at the sheriff's sale. His agent was, and knew that he did not purchase for the plaintiff the 63 acres. His knowledge was, in law, knowledge of the plaintiff; and is it not a fraud in the plaintiff, now, after the lapse of nearly fourteen years, to put forth this claim under the sheriff's deed? The land has been, in the meantime, conveyed several times to *bona fide* purchasers. We hear nothing of the plaintiff's claim until this action is commenced. The defendant is able to show that the plaintiff never purchased the land, and that the description, in the exception in the deed, is mistaken; and the plaintiff now says, although this may be so, a bill should have been filed within ten years, to correct the mistake and reform the deed. I am not prepared to say that in a court of equity, the defendant may not have relief on the ground of fraud. But as I have come to the conclusion that the ten years' limitation does not affect the defendant, I will not pursue, further, these suggestions.

By the statute, (2 *R. S.* 302, § 52,) in all other cases not provided for, " bills for relief shall be filed within ten years after the cause thereof shall accrue, and not after." When did the cause of action, for the relief which the defendant demands, accrue? In *Varick* v. *Edwards*, (11 *Paige*, 290,) it was held

Bartlett *v.* Judd.

by the chancellor that when the person to whom land belongs in equity, is in possession, and is afterwards evicted, by a person having the mere legal title to the premises, the statute of limitations, as a bar to the equitable right, does not begin to run until such eviction. And the person so evicted may file his bill in chancery, to establish his equitable right to the premises, at any time within ten years after such eviction.

In my opinion this principle applies to the present case. It is true the cases are different. Here, the plaintiff in fact had no legal title, though he had written, mistaken, evidence of such title. The defendant in fact had the title, but the sheriff had given a deed which might endanger his title, and perhaps the defendant, or those having the title, might upon ascertaining the danger, from the language used in the deed, have at once resorted to a court of equity for its reformation, for the purpose of removing a cloud from the title. But were they bound to know that the plaintiff would put the construction upon the deed which is now put upon it; or, if he should, that he would ever attempt so inequitably to enforce it against the owner of the land? Was not the owner justifiable in waiting until an attempt should be made, by virtue of the *mistaken* deed, to disturb his possession? I think he could safely do so, and that *Varick* v. *Edwards* is an authority for this position. There the possessor of the land had an equitable title, and his adversary had a legal title; and the chancellor held that the statute did not begin to run until there was an eviction. If it should be held that one in possession of land, under what he supposes a good title, must before he is disturbed, file his bill within ten years to be relieved from a state of things which may subvert his title, if an action is instituted within twenty years, the statute will become a snare. The person who has a technical legal title may remain quiet until the ten years have elapsed, and then enforce his legal title, resorting to the statute as a bar to any equitable rights which the defendant, and possessor, may have, and which equitable title would have been a perfect answer to the plaintiff's legal title, had it been asserted within the ten years. In my opinion, the equitable defense of the de-

fendant was not barred by the statute. The referee should have decided that the deed be reformed.

It will not be necessary that we should express an opinion, whether the deed from the sheriff to the plaintiff is void because of its having been executed before the fifteen months had expired.

The judgment should be affirmed, unless the defendant desires that it be modified, so as to give the relief demanded in the answer, viz: that the deed be reformed; and if so, then the judgment should be so modified.

[ERIE GENERAL TERM, November 10, 1856. *Bowen, Greene* and *Marvin,* Justices.]