BENJAMIN FOSTER in equity *vs.* CYRUS KINGSLEY *et als.*

Cumberland. Decided December 17, 1877.

*Equity.*

To justify the reformation of a bond which has been assigned to a *bona fide* holder, for a valuable consideration, not only must the alleged error be proved, but it must also be proved that the assignee had notice of the error at the time of the assignment.

*Thus,* where a bond was erroneously written so that the maker by its terms obliged himself to give a good title to an unincumbered estate, when the understanding of the parties was that he should give a good title of his interest only as mortgager; *held,* that while the bond might be reformed as between the original parties, yet after its assignment to a third party without notice, a court of equity would not interfere to reform it; *held,* also that notice of the existence of a mortgage upon land is not notice that a bond by the owner of the equity of redemption, to convey the land by deed of warranty, is of necessity erroneously written.

BILL IN EQUITY for the reformation of a bond given in the sum of $2000, September 20, 1869, for the conveyance of certain real estate. The bill sets out that the defendant, Kingsley, made a conveyance to the plaintiff, subject to a mortgage of $1500, intended as security for $600 then lent by the plaintiff to him, and that the

plaintiff gave Kingsley the bond in question to reconvey, and by mistake of the scrivener the bond was written so as to require a conveyance to Kingsley or his assigns free from incumbrance and not excepting the mortgage, when the intention of the parties was that the plaintiff should reconvey only the same interest which Kingsley had conveyed to him, substantially an equity of redemption ; that Kingsley, September 16, 1871, in consideration of $700, assigned the bond to Joseph Chenery and Joseph Humphrey ; that the assignees tendered to the plaintiff, September 23, 1872, the $600 and interest, and demanded a deed with covenants of warranty against all incumbrance ; that the plaintiff offered to convey subject to the mortgage ; that the assignees refused to accept such a conveyance and commenced an action against him on the bond. The bill also alleges that the assignees knew the state of the title when they took the assignment, and asks that they be enjoined from prosecuting their action ; that the bond be reformed by adding after the words "common form" in the condition thereof the words "but subject to the mortgage to Prudence Thombs to secure the payment of $1500 and interest ;" and for other relief.

The defendant, Kingsley, admitted the statements in the bill, but the other defendants, the assignees, said in their answer that they had no personal knowledge of the outstanding mortgage, and that on inquiry by one of them of the plaintiff, before the assignment, he said he knew what was in the bond, and was ready to fulfill it, for that was what it was made for, and on the faith of that representation they purchased. They further said that at the time of the conveyance mentioned, Kingsley also made a bill of sale to his brother-in-law, the plaintiff, of all his attachable property, and all in defraud of creditors.

The deed from Kingsley to the plaintiff was recorded near its date. There was evidence tending to show that the real estate was of the value of $3000.

*J. H. Drummond*, for the plaintiff.

The blunder of the scrivener is apparent on the face of the papers. The record of the papers in the registry is notice to the defendants. The deed from Kingsley to Foster, becomes by reference a part of the bond ; and the deed mentions the mortgage.

*A. A. Strout & G. F. Holmes,* with *P. J. Larrabee,* for the defendants.

The assignees did not have actual knowledge of the mortgage; but if they did, it does not follow there was any error in the bond. The plaintiff's affirmative answer to the question whether he knew what was in the bond concludes him.

*Drummond,* in reply. Foster's declarations were made before he knew of the mistake. Their question indicates their suspicion of the mistake and the circumstances confirm it. The farm was worth $3000. Foster's claim was $600, the mortgage $1500 ; and the assignee's claim less than the balance, yet they required Kingsley to throw in the mowing machine, which would have been unconscionable and improbable if they had supposed the $1500 mortgage was to be paid by the plaintiff.

WALTON, J. This is a bill in equity to obtain the reformation of a bond. The bond is for the conveyance of real estate. At the time it was given the real estate was encumbered by an outstanding mortgage, to secure the payment of $1500. The bond is so written as to require the conveyance of an unincumbered estate. It is claimed that this was a mistake; that it should have been so written as to require no more than the conveyance of the equity of redemption.

If the bond was still held by the obligee, there would be no difficulty in granting the reformation prayed for ; for the obligee admits the error. But it is not now held by him. It has been assigned. And the evidence satisfies us that the assignees are *bona fide* holders for value. The question is not, therefore, whether it would be right to reform the bond as between the original parties to it, but whether it will be right to do so as between the obligor and the assignees. This, of course, will depend upon whether the assignees had notice of the error at the time the bond was assigned to them; for, to justify the reformation of a bond which has been assigned to a *bona fide* holder, for a valuable consideration, not only must the alleged error be proved, but it must also be proved that the assignee had notice of the error at the time of the assignment. *Whitman* v. *Weston,* 30 Maine, 285. 1 Story's Eq. Jur. § 165, and authorities there cited.

Upon this point the proof fails. We look in vain for the evidence that at the time of the assignment of the bond to them the assignees had any knowledge, from any source, that it did not truly embody the understanding and agreement of the parties. It looks as if one of the assignees might have had, at one time, a suspicion that the bond required of the obligor more than the latter was aware of; for he asked him, before taking the assignment of the bond, if he had read it. This the assignee admits. But he also swears that the obligor answered that he had, and knew what was in it, and that he would come up to the letter of it; that that was what it was made for. And both of the assignees swear directly and positively, that at the time of the assignment to them, they had no knowledge or intimation, from any source, that there was an error in the bond. And it is difficult to perceive how they could have had such knowledge; for neither the scrivener, nor the parties to the bond, had then discovered the error. How can strangers be supposed to have been wiser than the parties themselves? The contract was one which it was competent for the parties to make. No error was apparent upon the face of the bond. And if the parties who made the contract, and the scrivener who reduced it to writing, did not know that the instrument did not truly express the agreement, on what ground can it be assumed that the assignees knew it? They were not present when the agreement was made, nor when it was reduced to writing. How, then, could they know that the instrument was not correctly written? It is impossible that any one could have told them of the error, for no one, not even the parties themselves, then knew of its existence. The assignees are undoubtedly chargeable with constructive notice of the existence of the outstanding mortgage, for it was a matter of public record. But notice of the existence of the mortgage would not be notice of an error in the bond. It is neither illegal nor uncommon for parties to give a bond for the conveyance of an unincumbered estate when it is perfectly well understood that the estate is under mortgage at the time. If it is understood that the obligor is to remove the incumbrance the bond ought to be so written. Notice of the existence of a mortgage upon land, is not, therefore notice that a bond to con-

vey it by a deed of warranty is necessarily erroneously written.

A careful examination of the evidence fails to satisfy us that, at the time of the assignment of the bond to them the assignees had notice, actual or constructive, that it was not correctly written. The reformation prayed for cannot, therefore, be granted. A court of equity never interferes to relieve a party from the consequences of an error, when the only effect of such an interference would be to lift a burden from the shoulders of one and place it upon the shoulders of another, when both are equally innocent and equally free from fault. 1 Story's Eq. Jur. §§ 64 *c*, 108, 139, 165, 381, 409, 434, 436.

> *Bill dismissed with costs*
> *for defendants.*

APPLETON, C. J., BARROWS, VIRGIN, PETERS and LIBBEY, JJ., concurred.