THOMAS DWYER *et ux. vs.* MANUEL D. CURRIA *et ux.*

MAY 9, 1932.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

HAHN, J. This is a bill in equity asking for the reformation of a certain deed and of two mortgages executed con-

currently with a subsequent warranty deed, and "for such other and further relief as may seem meet and just."

The hearing upon the fourth amended bill, answers and proof resulted in a decision for the complainants and final decree was entered ordering the reformation of two deeds and two mortgages and required the respondents, Manuel D. Curria and Anna Curria, hereinafter referred to as the Currias, to move a fence erected by them. The case is before this court on the appeal of said Currias, the other four respondents not having joined therein.

It appeared in evidence that the complainants in 1909 bought a lot 110 feet in depth extending from Wade street to Furnace street. A few years before the time of the negotiations herein referred to, the complainants erected a fence parallel with the street line dividing this property into two parcels: one 75 feet deep facing on Furnace street, occupied by the complainants, and the other 35 feet deep, referred to in this action as "No. 32 Wade Street."

Thereafter respondent LeLacheure purchased from the complainants said property at No. 32 Wade street. Testimony clearly shows that at the time of the purchase the above-mentioned fence was in good condition; that LeLacheure paid no attention to the fact that the deed erroneously described the lot conveyed as being 55 feet in depth and comprising the "easterly one-half of the lot" which the complainants then owned. Title was taken by LeLacheure in the name of one Alfred Lizotte. Several weeks later LeLacheure sold the property to the respondents Curria.

Testimony was conflicting as to the inspection of the property by the Currias. The witness Charles M. Cunha testified that he acted in behalf of LeLacheure in procuring the Currias as purchasers; that they inspected the house and the yard inside the fence; that some time after the original deed to the Currias had been recorded and returned to them they called him there and told him they had discovered that the deed called for a depth of 55 feet whereas, according to a survey made for them, the fence was only

35 feet from the Wade street line. The witness further testified that they asked him to intercede with the complainants and to obtain for them the additional 20 feet, and that Manuel Curria said they were claiming this additional depth not because they thought they had bought a lot of that depth but because it so appeared in the deed.

Undisputed evidence shows that a line drawn parallel to and at a distance of 55 feet from the Wade street line passes through an ell containing a bathroom added to the rear of the house occupied by the complainants.

Testimony also shows that in May, 1930, the Currias moved a portion of the fence from its original location 35 feet from Wade street to a point 55 feet from that street.

Although eight reasons of appeal are given by the Currias, the main question is whether the evidence in this case justified the trial court in deciding for the complainants and in approving the entry of a final decree reforming the description of the lot in the warranty and mortgage deeds.

The trial justice found that the complainants at the time of the transaction with LeLacheure were old and ignorant of business, that they entrusted the matter of preparing the deed to said LeLacheure who had a title company prepare the same; that as between the complainants and LeLacheure, the first vendee, there was no difficulty about reforming the deed because LeLacheure admitted that it was the house he wanted, that he did not pay particular attention to the deed's description of the lot, assuming that he was buying the land within the enclosure, and that he did not intend to buy any part of the property occupied by the complainants.

The trial justice further found that the Currias saw the house and were told that they were buying what was in the enclosure; that, although they remarked on the smallness of the lot, they nevertheless chose to buy it; that both Currias admitted they did not intend to buy any part of the house occupied by the complainants. Said justice,

after referring to LeLacheure's testimony, said: "I feel that the evidence is quite clear to the effect that all that either of these vendees intended to buy was the land within that fence. They looked at it and saw it. . . . It seems to me I would be doing a very grave injustice to these complainants to find for these people who took advantage of what they discovered afterwards and what they thought would be the basis of a good claim that they might make."

Findings of fact by the trial justice should not be set aside unless they clearly fail to do justice between the parties. *Hurst* v. *Brayton*, 43 R. I. 378; *Nichols* v. *Hoxie*, 33 R. I. 77; *Simeone* v. *Antonelli*, 156 A. (R. I.) 799. A careful consideration of the record discloses ample evidence to support the conclusions of fact reached in the instant case. The law applicable thereto is clearly stated in *Allen* v. *Brown*, 6 R. I. at 396, wherein the court, in an opinion by Ames, C. J. says: "The power and duty of a court of equity to reform an instrument drawn by mistake, so as to make it express what both parties originally intended, is unquestionable, whether the instrument be designed as evidence of an executory or an executed contract, and whether the question arises between the parties to the instrument, or those claiming under them in privity, as heirs, devisees, judgment creditors, voluntary grantees, or purchasers with notice. 1 Story, Eq. Jurisp. § 165. In the exercise of this jurisdiction the court will require for its action clear, full, and satisfactory proof of the mistake; and will, both in the spirit of the common-law rule which prohibits the admission of inferior evidence to contradict that which is written, and of the statute of frauds, where it applies, proceed with great caution upon evidence resting in parol. Such a court would, however, in the language of a distinguished American jurist, 'be of little value if it could suppress only positive frauds, and leave mutual mistakes, innocently made, to work intolerable mischiefs, contrary to the intention of the parties. It would be to allow an act, originating in innocence, to operate ultimately as a fraud, by enabling the

party who receives the benefit of the mistake, to resist the claims of justice, under the shelter of a rule framed to promote it.' 1 Story, Eq. Jurisp. § 155."

The instant case presents clear, full and satisfactory proof of a mutual mistake, innocently made, but which if not remedied would work intolerable hardship upon and loss to the complainants.

One of the points strongly urged by the Currias is that the complainants were guilty of negligence in not noting the error at the time of the execution of the deed. This court has held that mere neglect or omission to read or know the contents of a written instrument before execution is not necessarily a bar to the cancellation thereof. *Perkins* v. *Kirby,* 39 R. I. at 353.

The appeal of the respondents is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Fergus J. McOsker,* for complainants.

*James J. McCabe,* for respondents Curria.

*Frank H. Wildes, William B. Sweeney,* for other respondents.