WILLIAM SIMMONS et al., Appellants, *v.* CHESTER J. CAPRA et al., Respondents, et al., Defendants.

Fourth Department, December 31, 1947.

*Dana L. Jewell* for appellants.

*Nicholas J. Rogers* for respondents.

HARRIS, J.   Review of an order which order dismissed an amended complaint herein under rule 106 of the Rules of Civil Practice, on the ground of insufficiency as shown on the face of such amended complaint.

In form, the action is one for reformation of deeds of two certain adjoining parcels of land, one parcel deeded to the defendants Capra, and the other to the plaintiffs; what is involved is the determination of the location of the line between the separate premises now occupied by the plaintiffs and by the defendants Capra.

Examination of the complaint shows the following to be alleged: At the time of his death, August 21, 1941, one Austin C. Cain was the owner of two adjoining lots in the city of Olean, known as No. 1105 and No. 1111 West Sullivan Street, being 100 feet front by 110 feet deep; No. 1105 was east of No. 1111. At the time of his death, there was a separate dwelling on each of the lots, a driveway from the street between the dwellings and a three-car garage in the rear, the driveway ran from the street to the center stall of the garage.   By separate purchase and deed of each one, Austin C. Cain had acquired the 100 foot front described as Lot 32 and Lot 34 on a certain map, each lot being 50 feet front by 110 feet deep. After his death, by deed dated May 1, 1942, his administratrix with the will annexed conveyed the premises No. 1105 West

Sullivan Street to the defendants Capra; in the conveyance the description used was one of the subdivision lot (number 34) according to the description in the deed to Cain; the deed from the administratrix made no mention of the driveway or the garage. On May 14, 1942, to correct the previous deed to the defendants Capra, the administratrix of Austin C. Cain gave to them a correcting deed with the same description of the original deed to them, but further adding a perpetual easement in the driveway " as it is now maintained and used at 1111 West Sullivan Street ". From the time of the death of Austin C. Cain and until her death, Jane Cain, his administratrix, occupied No. 1111 West Sullivan Street and the center and west stalls of the garage, and after the deeds to the defendants Capra they occupied the dwelling at No. 1105 West Sullivan Street and the east stall of the garage. Jane Cain died March 5, 1943, and the daughter of Austin C. Cain, Marion C. Parker, was appointed administratrix *de bonis non* of his goods and chattels with the will annexed. By order of Surrogate's Court, in March, 1944, said Marion C. Parker, as such administratrix was authorized to sell and did deed the premises No. 1111 West Sullivan Street to the plaintiffs; such order permitting the sale was for the purpose of distribution of the proceeds of the estate. At the time of such sale to the plaintiffs, Marion C. Parker was in possession of the premises No. 1111 West Sullivan Street and the center and western stalls of the garage; since the sale to the plaintiffs they have been in possession of these premises by their tenants and have used said driveway for access thereto. Prior to the purchase of such premises by the plaintiffs, they were furnished an abstract of title of the premises setting forth the correcting deed from Jane Cain to the defendants Capra; and in taking title the plaintiffs relied on said deed and the statement therein contained to the effect that the driveway was a part of the premises purchased by the plaintiffs. In the month of October, 1946, but at no time prior thereto, the defendants Capra notified the plaintiffs Simmons that they, the defendants, Capra, had had a survey made and that the Capra line was west of the driveway and that, therefore, the driveway and part of the premises to the west thereof occupied by the plaintiffs, including the garages, were owned by the defendants Capra. Thereafter the defendants Capra forbade the plaintiffs Simmons from using the driveway and the garages. By mistake of the draftsman, the deed to the defendants Capra from Jane Cain, as administratrix, described the lot so conveyed to the Capras as subdivision lot

No. 34, and this description had been used in the petition and order for authority to sell to the Capras. That actually the grantor, Jane Cain as administratrix delivered, and the grantees Capra accepted, the premises so conveyed by Jane Cain to the Capras as lying east of the east side of the driveway and including the land on which the easterly stall of the garage was located, and as not including any land west of the said east line of the driveway. No proof was taken or decision made in the proceedings to sell to Capras with regard to the precise location of the division line between the part sold by Jane Cain and the part retained by her. When the deed was made from Marion C. Parker as administratrix to the plaintiffs, the premises were by mistake described as Lot No. 32, but both the said Marion C. Parker as administratrix and the plaintiffs understood that the deed to the plaintiffs described the land bounded on the east by the east side of the driveway and including the center and westerly stalls of the garage. The subdivision map to which reference was made shows that Lot No. 34, being the one described in the original deed to the Capras, and Lot No. 32 in the deed to the plaintiffs, had between them a line about ten feet west from the east side of the said driveway. No proof was taken or decision made in the proceeding authorizing the sale to the plaintiffs as to the precise location of the dividing line. The amended complaint further alleges that the deeds to the defendants Capras constitute a cloud on the plaintiffs' title to the land occupied by the driveway and by the center and western stalls of the garage, and that by mistake the premises described as deeded to the plaintiffs by Marion C. Parker as administratrix, did not purport to convey all the premises intended to be conveyed thereby.

It is on the above facts as alleged in the amended complaint that Special Term has dismissed such complaint. Special Term held that there was no mutual mistake on which to base the alleged cause of action " since there was no privity as between the plaintiffs and defendants Capra." To support such statement, Special Term cited *Amend* v. *Hurley* (293 N. Y. 587, 595), *International Photo Rec. Mach.* v. *Microstat Corp.* (269 App. Div. 485, 489), *Abrams* v. *Maryland Casualty Co.* (270 App. Div. 901). The amended complaint was dismissed.

An examination of the cases cited by Special Term, as above stated, shows that these cases are not decisive of the questions involved herein. *Amend* v. *Hurley* was a suit in fraud because of the omission of a provision in a contract, and the dismissal was because there was no fiduciary relationship between the

plaintiff's attorney, who it was claimed committed the fraud, and the defendant and his attorney, and that there was no evidence of fraud. In *International Photo Rec. Mach.* v. *Microstat Corp.,* the trial court found that there was no mutual mistake in the preparation and execution of the contract involved, and that, therefore, there could be no reformation. In *Abrams* v. *Maryland Casualty Co.,* it was held " Plaintiff was not entitled to reformation. * * * No mutual mistake was established in this action."

Special Term herein used the term " privity " in the sense of mutuality between parties involved in the litigation. For the purposes of the motion herein considered, there must be taken at face value the allegations of the complaint; such allegations do show a mutual mistake between the grantor to the Capras and the Capras, and between the grantor to the plaintiffs and the plaintiffs. If such mutual mistake existed, then Austin C. Cain's representatives as grantors could bring suit against the Capras to correct such mistake. The question here involved is whether or not there was sufficient privity between Cain, his grantors and the plaintiffs so as to enable the plaintiffs as privies to bring this action based on such mutual mistake made between their grantor and the Capras.

The term " privity " as used in this alleged cause of action has a broader significance than that used at Special Term. In the feudal sense, privity denotes mutuality. In our body of the law, it has a wider and differing significance because it may not only include mutuality, but it also does include successive relationship to the same right of property. (*Mygatt* v. *Coe,* 124 N. Y. 212; *Bartlett* v. *Judd,* 23 Barb. 262, affd. 21 N. Y. 200; *Bennett* v. *Couchman,* 48 Barb. 73; *Old Dominion Copper & S. Co.* v. *Bigelow,* 203 Mass. 159, 214; 50 C. J., p. 403 *et seq.*) One in privity stands, in relation to a third party, in the post, stead or place of one to whom he succeeds in title. As alleged in this amended complaint, we have the plaintiffs as successors in title from a source (Cain title) which is also the source of the Capra title. What is involved in this lawsuit is whether or not by mutual mistake the Capras were given a description of property which was more in extent than intended by their grantor, and whether or not the extra portion was intended to be retained in the premises subsequently deeded to the plaintiffs. On this amended complaint we have alleged mutuality and privity sufficient to require the defendants to take issue, if they can, to the complaint. (*Bartlett* v. *Judd,* 23 Barb. 262, affd. 21 N. Y. 200.)

The respondents contend that the order now under review is not appealable. In this contention, they are in error. (Civ. Prac. Act, § 609, subds. 4, 5.)

The respondents raise another question to the effect that the action is barred because the deeds were given by court orders, and there is no allegation that the Surrogate's Court erred in granting the authority to convey. The answer to this contention is that the proceeding for an order to convey simply takes the place of a power of sale in a will. (Surrogate's Ct. Act, § 215, *et seq.*)

The amended complaint alleges sufficient to require an issue to be raised by the defendants, if they desire, to put the allegations in issue. The order from which appeal is taken should be reversed on the law, with $10 dollars costs and disbursements, the motion to dismiss denied, with permission given to the defendants, if they desire and are so advised, to plead to the complaint and thus put the plaintiffs on their proof.

All concur; LARKIN, J., not voting. Present — TAYLOR, P. J., HARRIS, McCURN, LARKIN and LOVE, JJ.

Order reversed on the law, with $10 costs and disbursements, and motion denied, with $10 costs.