FREDERICK J. HOULIHAN *et ux. vs.* ROBERT E. MURPHY *et al.*

JANUARY 19, 1962.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

CONDON, C. J. This is a bill in equity for the reformation of two certain deeds of real estate on the ground of mutual mistake. The cause is here on the appeal of the respondents Robert E. Murphy and Lucy P. Murphy from a decree of the superior court granting the relief prayed for against them. The other respondents did not answer to the bill, leaving the Murphys as the only contesting respondents. We shall hereinafter refer to them as the sole respondents on this appeal.

In 1950 the real estate in question was owned by Alton W. and Roby H. S. Angell, husband and wife. It consisted of lots 110, 111, 112 and 113 on the Bishop Heights plat in the town of Johnston. On lot 113 there was a house a part of which was on lot 112. On lot 111 there was another house, which was also partly on lot 112 where there was a well connected to that house. The first-mentioned house was also connected with the well sometime in 1952 or 1953 while a member of the Angell family lived there but in 1956 this connection was cut off because the well had gone dry.

On October 5, 1950 the Angells entered into a written contract to sell "lots 110, 111 and part of 112" to Frederick J. and Amanda E. Houlihan, husband and wife. On November 29, 1950 pursuant to such contract they received from the Angells a deed which conveyed only lots 110 and 111. Without noting that it failed to refer to "part of 112" in accordance with the contract they caused it to be recorded but they did not record the contract. They did not examine the deed when it was returned from the town

clerk's office and it was not until 1959 they first learned of the omission.

On May 15, 1957 Roby S. Angell conveyed to the Murphys the other house on lot 113 and also lot 112. Before purchasing they had the title to those lots searched by a title company and were informed that title was free and clear in Mrs. Angell, but they did not have the lots surveyed to determine the location of the boundaries. Consequently they did not become aware until 1959 that the Houlihans' house and well were on part of lot 112. In that year they were apprised of that fact by a survey which they had made to ascertain the true boundaries.

The Houlihans claimed that a mistake had been made in each deed contrary to the intention of the parties and that they should be reformed to give effect to such intention, namely, that only a part of lot 112 not covered by their house and well was intended to be conveyed to the Murphys and that the other part was intended to be conveyed to them. On the other hand the Murphys contended that they had no knowledge of the sale contract between the Angells and the Houlihans when they, the Murphys, bought in 1957; that the records of land evidence gave them no notice thereof; and that therefore they were bona fide purchasers without notice of the Houlihans' equity of reformation.

On the evidence before him the trial justice rejected their contention and expressly found that they had actual knowledge before they purchased that the Houlihans' boundary extended into lot 112 to include the well and the portion of their house. He therefore held that the Houlihans were entitled to reformation of the deeds in question so as to give them part of lot 112 in accordance with the provisions of the contract. However, the Houlihans conceded that they would be satisfied with less than such full measure of relief in order to afford the Murphys continued access to their garage over an existing driveway thereto, a portion of

which cut across the front part of the Houlihans' portion of lot 112.

To give effect to his holding subject to this express concession the trial justice decreed: "2. That the respondents forthwith convey to the complainants the northwestern half of Lot 112 with the exception of a triangular piece in the southeast corner thereof, beginning at a point eleven (11) feet from the southeasterly corner of Lot 111, thence running nine (9) feet southeasterly, bounding southwesterly on Elwin Avenue, thence turning a right angle and running northeasterly fifty (50) feet bounding southeasterly along the middle line of Lot 112, thence running in a straight line southwesterly to the place of beginning."

The Murphys contend that the decree is against the law and the evidence and the weight thereof and that it fails to do substantial justice between the parties. They argue that on the law and the evidence they were bona fide purchasers and that the trial justice erred in not holding that they were entitled to rely upon the title of Mrs. Angell as it appeared in the records of land evidence in the town clerk's office and to rely upon the boundaries of lot 112 as shown on the recorded plat. They also contend that the evidence that they had knowledge of the Houlihans' occupancy of a portion of lot 112 is not clear and convincing.

There is no merit in respondents' contention as to the law. The trial justice did not err in holding that they could not prevail on their contention unless they were bona fide purchasers without knowledge of complainants' equity. Whether such knowledge existed was the decisive issue in the case. On that issue complainants had the burden of proof and the trial justice expressly found that they had discharged it by clear and convincing evidence. With this finding respondents disagree and contend that the weight of the evidence is to the contrary.

From our examination of the transcript we cannot say that the trial justice was clearly wrong in his finding on

this issue. It appears from the evidence that before respondents purchased they went on the land with Mrs. Angell and there was some question as to where the boundary of the Houlihans' land was located. She testified that she told them it was near the garage and the well, that the well belonged to the Houlihans, and that she thought they might let the Murphys use it. To the question: "Now, did you have any discussions with them as to what they were buying at the time they bought the house?" she further testified: "Well, they told me they bought the house and the driveway and the garage up until the little apple tree path." As to the driveway to the garage she admitted that she understood the driveway went with the house the Murphys were buying.

Apparently respondent Robert E. Murphy understood that he was buying subject to certain conditions which he observed with reference to his boundary with the Houlihan property since on cross-examination he testified as follows: "Q. * * * The only reason why you are saying now that the land on which the well is, and that portion of the house which the Houlihans live in, which is on lot 112, belongs to you is because that's what it says in the deed, isn't that right? A. No, that isn't right. Q. Well, why do you—do you claim that that portion of the house which is on lot 112 belongs to you? A. When I bought the land, I didn't think I was buying that, no, but I thought I had eighty feet of land. * * * Q. And you are claiming lot 112 because of what it says in the deed. A. Yes. Q. And you are also claiming that area of the land which includes the well, and all, because of what it says in the deed, isn't that right? A. Well, I didn't know where the line went. Q. Exactly. But you are saying now that it belongs to you because that is what the deed says. A. That's what the deed says. Q. But you did not know that you were buying that at that time. A. I didn't know. No. Q. As a matter of fact, you didn't think you were buying that well and that house at

that time, isn't that right? A. I didn't—the well, I didn't know, the house I knew I wasn't buying. Q. And yet within a month after moving in there, you put in your own well. A. Yes, I did. Q. And didn't raise any question with Mr. Houlihan at all about using that well, or making it give water. A. No. Q. The one that is on lot 112. A. No. Q. Never even had a discussion with him about it. A. No, I didn't."

In the face of such knowledge prudence required the Murphys to investigate and ascertain what effect such occupancy on the part of the Houlihans might have on the area of the lots which they were intending to purchase from Mrs. Angell. Inasmuch as they failed to exercise such prudence they were not innocent purchasers without notice. *Ronio* v. *Loffredo*, 79 R. I. 394. While the facts are not precisely the same as in *Dwyer* v. *Curria*, 52 R. I. 264, the trial justice did not err in relying upon that case as authority for his holding that, not having established their claim as bona fide purchasers, they stood in the shoes of the Angells insofar as defending against complainants' right to the equity of reformation.

The respondents make a further claim, namely, that complainants should be denied relief because they were negligent in not examining their deed and noting that it failed to convey part of lot 112 in accordance with their contract. And they also contend that complainants were negligent in not recording their contract in the records of land evidence. There is no merit in either contention. The complainants were under no legal duty to do either and the trial justice did not err in holding that in the absence of such a duty complainants could not be charged with negligence. *Dwyer* v. *Curria, supra;* 2 Restatement, Contracts, §508, p. 977.

On the whole, after carefully weighing the evidence and upon full consideration of the reasons advanced by the trial justice in his rescript for granting the relief prayed for as

modified by the complainants' concession with reference to the driveway, we cannot say that his decision fails to do substantial justice between the parties.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Abedon, Michaelson & Stanzler, Milton Stanzler,* for complainants.

*John P. Bourcier,* for respondents.