Casper G. SARGENT, Jr. and Teresa L. Sargent

v.

Phillip E. COOLIDGE and Edward G. Coolidge.

Supreme Judicial Court of Maine.

Argued June 10, 1981.

Decided Aug. 12, 1981.

Frank B. Walker (orally), Ellsworth, for plaintiff.

Libhart, Ferris, Dearborn, Willey & Ferm, Wayne P. Libhart (orally), Ellsworth, for defendants.

Before McKUSICK, C. J., WERNICK, GODFREY and CARTER, JJ., and DU-FRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

This is the second appeal in a tortuous course of litigation triggered by a mutual mistake of fact concerning where on the face of the earth lay the southern boundary of certain shorefront property in Trenton. The parties aggrieved in the first appeal were the plaintiffs, Casper and Teresa Sargent; those aggrieved presently are the defendants, Phillip and Edward Coolidge. Once again, for reasons that are explained below, we set aside the judgment before us and remand for further proceedings consistent with this opinion.

In 1968, Margaret Coolidge, the mother of the defendants, attempted to convey to the plaintiffs' predecessors in title, Paul and Dorothy Spates, a 175 foot square parcel of undeveloped shorefront property. The intended land is situated immediately to the south of her family cottage. In 1970, the Spates, by a description identical to that of their deed from Mrs. Coolidge, attempted to convey the same 175 foot square parcel to the plaintiffs. By will probated following her death on November 23, 1971, Margaret Coolidge, purported to leave the family cottage to her sons, the defendants. It is clear that none of these transactions were undertaken fraudulently or in bad faith.

The plaintiffs testified without contradiction that during the ensuing four or five years they treated the parcel south of the Coolidge cottage as their own, clearing trees, installing a septic tank, electric lines and a mobile home, putting in a road, and building a large deck next to the mobile home.

Around 1976, the plaintiffs were informed by the agent of an adjacent landowner named Mitchell that they were occupying her property. The plaintiffs hired a surveyor and discovered from the results of the survey that the adjacent landowner was correct. According to the boundary calls in the plaintiffs' deed, most of the plaintiffs' property lay under the site of the defendants' cottage. Thereupon, the plaintiffs moved off the parcel south of the cottage

and, on June 24, 1977, brought a real action at law against the defendants pursuant to M.R.Civ.P 80A to establish their title both to the cottage and to the land on which it was built.

The case was tried in Superior Court, Hancock County, before a justice sitting without a jury. The justice concluded that the plaintiffs had failed to prove their cause of action and ordered judgment for the defendants. On what amounted in effect to "convincing evidence," see Day v. McEwen, Me., 385 A.2d 790, 794–95 (1978), the justice determined that (1) the plaintiffs' deed was unambiguous, describing a 175 foot square parcel that could be located on the face of the earth; (2) the southern boundary of that parcel was the division line between old Trenton lots 29 and 30 [as distinct from the supposed boundary bordering a ravine lying over 175 feet south of that division line];[1] (3) north of the lot 29–30 division line and within the plaintiffs' property as described was the Coolidge cottage, but the land associated with the cottage did not constitute a full 175 foot square parcel; (4) Margaret Coolidge never intended to sell the cottage or the land on which it was built; (5) neither the Spates nor, in turn, the plaintiffs ever intended to buy the cottage or the land on which it was built; and (6) the parties to this action and their predecessors in title thought they were dealing with a hitherto undeveloped 175 foot square lot located south of the cottage, title to which the parties believed to have been at the outset within Margaret Coolidge's southern boundary.

Upon appeal by the plaintiffs, Casper and Teresa Sargent, we vacated the judgment of the Superior Court. Sargent v. Coolidge, Me., 399 A.2d 1333 (1979). This case at that time presented itself solely in the posture of a real action at law.[2] We noted in our opinion that, within the meaning of M.R. Civ.P. 80A, the plaintiffs had proven a deed title in fee simple absolute to the land containing the cottage; that actual proof of seizin in the plaintiffs or disseizin by the defendants is not necessary under Rule 80A; that the plaintiffs' deed, although labelled "quitclaim," purported to "bargain, sell, and convey" land, as distinct from a pure quitclaim purporting merely to convey any "right, title, and interest" in land; that, therefore, the plaintiffs had made out a prima facie case of superior title, which, because the deed was unambiguous and the action legal rather than equitable, could not be contradicted by parol evidence of what the parties intended to convey and possess. Id. at 1343.[3] We further noted, however, that "[a] remand mandating a judgment for the plaintiffs .... [without first allowing the Superior Court to balance the equities] might produce an unconscionable result." Id. at 1346. Hence, we vacated the judgment in order to allow the defendants thirty days to file a counterclaim for equitable relief.

Following the receipt of our mandate, the defendants counterclaimed for reformation. They requested that, consistent with the original intent of the plaintiffs and of both parties' predecessors in title, the property description in the Coolidge-to-Spates deed

---

1. The property description in the Coolidge to Spates deed, which is identical to that in the Spates to Sargent deed, does not mention the lot 29–30 division line by name. Instead, the description refers to the "southerly side line of the premises described as conveyed" to Margaret Coolidge by Nettie Moore, mother of Margaret Coolidge and defendants' grandmother. During the first trial, a surveyor who had examined both the land and Margaret Coolidge's chain of title testified that the above-mentioned "southerly side line" was the line dividing lots 29 and 30. No testimony to the contrary was introduced.

2. Defendants' failure to seek equitable relief below was conceded at oral argument to be counsel's "procedural strategy." 399 A.2d at 1346. Regardless of what that strategy consisted, it was risky. See M.R.Civ.P 13(a) and 13(f). See generally R. Field, V. McKusick, L. K. Wroth, Maine Civil Practice §§ 13.1, 13.8.

3. It has long been the law in Maine that in an equitable action to reform a deed parol testimony is admissible to prove mutual mistake. See, e. g., Farley v. Bryant, 32 Me. 474 (1851); Andrews v. Andrews, 81 Me. 337, 17 A. 166 (1889); Wolff v. Gibney, Me., 386 A.2d 325 (1978). See generally Schuline v. Pelzer, 2 Ill. App.3d 791, 276 N.E.2d 832 (1971).

and the Spates-to-Sargent deed be reformed to convey a 175 foot square piece of land located *south* of the now established lot 29–30 division line.

As if upon order *for a new trial under* M.R.Civ.P. 59(a) the single justice who had originally presided over the plaintiffs' claim heard testimony concerning the defendants' counterclaim. In his judgment he reaffirmed the facts found in the prior trial, but concluded:

> This Court cannot reform the Deeds as requested by Defendants in their counterclaim. To do so would not do equity to Plaintiffs because most, if not all of the land described in the Counterclaim is not owned by the Defendants, *except by a possible claim of adverse possession.* (emphasis added)

The ensuing judgment provided that the plaintiffs recover against the defendants so much of the land underlying the Coolidge cottage as had been owned by Margaret Coolidge at the time of her conveyance to Paul and Dorothy Spates—a parcel amounting to something less than 175 foot square feet.[4] Should this result stand, the plaintiffs would acquire land and a cottage they never intended to buy and the defendants would be ousted from possession of that which their mother never intended to sell.

■ It may be inevitable that one or the other or both parties may suffer in some degree from this mutual factual mistake. Once equity jurisdiction attaches, however, the court can go on to decide the entire controversy, including matters that would otherwise sound "at law." *Matter of International Paper Co., Etc.,* Me., 363 A.2d 235, 241 n.3 (1976). *See generally Pomeroy's Equity Jurisprudence,* Vol. 1, § 242 (5th ed.

1941). Under the circumstances of this case, we think that equity should not rest until the "possible claim of adverse possession," to which the above-quoted portion of the judgment has alluded, is definitively settled.

■ Neither side has argued the merits of remanding for trial on the adverse possession issue. Obviously content with the judgment, the plaintiffs, citing *Adams v. Stevens,* 49 Me. 362 (1861), point to the "general rule" that reformation for mutual mistake can be obtained only in litigation between the original parties to the deed.[5] As *Adams* makes clear, such a rule is designed to protect the interests of bona fide purchasers. *Id.* at 365. Even were we to assume that the plaintiffs can equitably be deemed "purchasers" for value of the Coolidge family cottage—a dubious assumption under the facts of this case, *see, e. g., Hartman v. Tillett,* 86 Ohio App. 20, 40 Ohio Op. 456, 89 N.E.2d 613 (1948)—they are in no sense "bona fide purchasers for value without notice" within the meaning of the rule which allows reformation of deeds for mutual mistake of fact beyond the immediate parties to the original conveyance. It is true that the Sargents entered into their purchase innocently, but innocence regarding the legal import of their deed will not necessarily bar reformation. They are chargeable in the instant case with notice that at the time of their purchase the cottage was occupied by the Coolidges. Possession is sufficient notice to put a reasonable purchaser on inquiry, an inquiry which, if pursued here, would have brought to light the factual mistake in the original conveyance. *See Shelor v. Witt,* 69 Ill. App.3d 172, 25 Ill.Dec. 561, 387 N.E.2d 18

---

4. *See* 399 A.2d 1333, at 1339–40.

5. The defendants' mother, grantor of the deed to the plaintiffs' predecessor in title, is dead. For purposes of seeking reformation, the defendants stand in her shoes. *See, e. g. Simmons v. Capra,* 273 App.Div. 83, 75 N.Y.S.2d 574 (1947).

Nearly two weeks *after* trial had been completed on the counterclaim for reformation, the defendants did file a complaint against the plaintiffs' predecessors in title, Paul and Dorothy Spates. The Spates entered a general appearance for the limited purpose of disclaiming all right, title, and interest in the disputed property. Subsequently, this third party complaint was dismissed for untimely filing.

Since we are satisfied that the Spates have nothing to gain or lose by the ultimate disposition of the defendants' counterclaim, it is unnecessary that they be part of any further proceedings. *Cf. Day v. McEwen,* Me., 385 A.2d 790 (1978).

(1979) and cases cited therein. *See Dumais v. Gagnon,* 433 A.2d 730, p. 736 (1981).

■ The plaintiffs also contend that Margaret Coolidge could have avoided her mistake, had she surveyed the boundary lines of her property before deeding away any part of it. However true this may be, the same can also be alleged of the plaintiffs. Under the circumstances of this case, a mere failure to survey is not so egregious an omission as would stay the hand of an equity court from reforming the deeds, especially where both parties were guilty of such neglect. *See Houlihan v. Murphy,* 93 R.I. 499, 177 A.2d 192 (1962); *Cherkoss v. Gasser,* 123 Conn. 368, 195 A. 737 (1937).

The defendants, for their part, urge us to reverse the judgment of the Superior Court and remand with an order that reformation be granted. They cite *Tibbetts v. Pelotte,* Me., 427 A.2d 956 (1981) in support of this disposition. In *Tibbetts,* both buyer and seller intended to transfer title to 60 acres. But a warranty deed through which the transfer was attempted recited a conveyance of 35 acres and, due to a mutual mistake concerning the location of a boundary line contained in the deed's property description, 35 acres was all that the seller owned and could convey. We approved the conclusion of the District Court that, before the buyer could sue on the deed for breach of its covenants, the deed first had to be reformed in the Superior Court to reflect the title intended to be conveyed. Because the deed there gave the plaintiff a legal action for breach, *Tibbetts* must be distinguished from this case. Here, we are dealing with deeds that contain neither specific covenants nor a general warranty. All that the Coolidge-to-Spates and the Spates-to-Sargent deeds promise is to warrant and defend against the claims of persons "claiming by, under, or through" the grantors. There is nothing in the record to suggest that the claim of the abutting land-owner to the property south of the cottage arose "by, under, or through" any action of Margaret Coolidge or Paul and Dorothy Spates.

Hence, despite the plaintiffs' intended purchase of and improvements upon that property, reformation of their deed would give them a worthless paper title—*unless,* it is important to note, title had ripened by adverse possession in the plaintiffs' grantors or predecessors.

The "possible claim of adverse possession," noted above, is thus central to the disposition of the defendants' request for reformation. According to the record testimony, the shorefront property entered the defendants' family around 1946 through purchase by Nettie Moore, grandmother of Phillip and Edward Coolidge. The cottage was constructed shortly thereafter. The Superior Court found from uncontroverted evidence that the Coolidge family believed their southern boundary extended to a ravine over 175 feet south of the subsequently established true line. Phillip Coolidge testified that the parcel the plaintiffs thought they were purchasing was at one point being saved for Nettie Moore's son, General Bryant Moore. The family knew that parcel as "The General's Lot." Bryant Moore was killed in Korea and, in 1954, Nettie Moore conveyed the disputed land to her daughter, Margaret Coolidge. The property between the ravine and the true line continued to be used every year. The Coolidge children played there and the family picnicked there. To the defendants' knowledge, no third party had ever claimed that property prior to the plaintiffs' encounter with the agent of the adjacent landowner.

Whether title to the parcel south of the cottage ripened in Margaret Coolidge by adverse possession before she attempted to transfer her interest to the Spates is, such evidence suggests, a triable issue. *See, e. g. McMullen v. Dowley,* Me., 418 A.2d 1147 (1980). The presiding justice explained that he was admitting the evidence to assist him in understanding Margaret Coolidge's state of mind at the time of her conveyance to the Spates. We are satisfied that he was not admitting it to dispose of the issue of adverse possession.[6] This issue, of course,

6. During a pre-trial conference discussing testimony that the defendants were about to offer, the court put the rhetorical question. "You don't think this court can decide the question

he could not resolve without the joinder of the abutting landowner and her successors in interest, if any, as interested parties. M.R.Civ.P. 19(a)(2).

■ Because all interested and necessary parties to the adverse possession claim of title to the parcel of land between the true southerly boundary of the Coolidge lot and the ravine raised by the defendants in support of their counterclaim for reformation of the original deeds were not made parties therein and in their absence full equitable disposition of the entire controversy between the parties cannot be had, we must vacate the Superior Court's judgment in favor of the plaintiffs and remand the case for retrial only in connection with the defendants' counterclaim. By their own testimony, the plaintiffs did not, and still do not, want the Coolidge cottage, provided they can obtain unclouded title to the land they thought they had purchased.

■ Should, however, the defendants on retrial of the counterclaim fail to sustain their claim that Margaret Coolidge or the Spates had acquired a superior title to the parcel they had intended to transfer, then, reformation must be denied. This result follows from the maxim that the law will prevail where the equities are equal. *Foster v. Kingsley*, 67 Me. 152, 156 (1877); *Lumbert v. Hill*, 41 Me. 475, 483 (1856). As we explained in *Coolidge v. Sargent I, supra*, the plaintiffs by their deed already have *legal* title.[7]

The entry will be:

Judgment of the Superior Court vacated and defendants' counterclaim for reformation remanded for further proceedings as may be necessary to determine the issue of adverse possession, the Court to order that all interested and necessary parties as indicated in this opinion be joined as parties to the counterclaim.

Accordingly, the case is remanded for further proceedings consistent with the opinion herein.

All concurring.

of adverse possession ... [when] the parties are not before the court or anything?" At the end of that conference, the presiding justice expressly told counsel, "I am not going to determine if adverse possession existed in this case."

7. Although this case may be settled without the expense of further litigation, in order to prevent further delay, we suggest a final caveat in the event the case is retried and adverse possession is not proven; this, without deciding any point of law in regard thereto. The plaintiffs might offer evidence of what they paid for the land they were asked to vacate together with the cost of all the improvements they made thereon. Similarly, the defendants might offer evidence of the current fair market value of the cottage together with the value of im-

provements they may have made while, unrealized by them but known to the plaintiffs, the cottage was no longer theirs. If it appears to the Superior Court that the value of the latter exceeds the value of the former, an order compelling the plaintiffs to remit to the defendants the difference as part of the court's judgment in favor of the plaintiffs respecting the reference land and cottage might not be unwarranted. We recognize that compliance with such an order might in effect compel the plaintiffs to immediately put the cottage up for sale. But we also recognize that an action for damages based on a deeds' covenants—an action foreclosed here by the fact that the plaintiffs accepted a deed without covenants—could return to the plaintiffs no more than their purchase price and improvement expenditures.